## A96A2313. BROWN v. THE STATE.
(477 SE2d 623)

ELDRIDGE, Judge.

Officer Joel McNeal, Columbus Police Department, received a dispatch on August 3, 1994, at approximately 6:50 a.m., to meet a concerned citizen at a restaurant on Victory Drive. Upon arrival, the concerned citizen identified herself to McNeal by name and told him that she was either a co-worker of appellant's or had some personal relationship with appellant, so that she had detailed knowledge of appellant and his habits; the woman's name and her exact relationship had been revealed to McNeal, but he had failed to record such information either in his report or notes. This concerned citizen told McNeal that appellant, identified by name, was a habitual violator. The correct name and an accurate physical description of appellant was furnished by this concerned citizen. A detailed description of appellant's car, including make, model, tag number, and color, as well as where it had been seen in operation by appellant only minutes previously, was provided to officer McNeal by the concerned citizen. The concerned citizen told McNeal that moments prior to his arrival, appellant was seen driving on Fort Benning Road, the vehicle stopped at a restaurant three or four blocks away, and appellant would be leaving shortly from such restaurant to go to work.

The officer found the witness, by her speech, appearance and conduct, to be credible, and she did not appear either intoxicated or angry with appellant. McNeal could not determine any apparent motive for the concerned citizen to provide the information.

While driving to the location of the restaurant on Fort Benning Road, McNeal saw the described vehicle a block south of the described restaurant. McNeal matched the tag number and description of the vehicle to the observed vehicle; the single male occupant also matched the physical description provided by the concerned citizen.

McNeal pulled the appellant over to investigate in order to determine the identity of appellant and the existence or absence of a valid driver's license in possession of appellant at that time. McNeal did not stop appellant with the intent to arrest him because he had observed no traffic violations and had the report of the concerned citizen as a basis for a stop only. McNeal asked appellant for his driver's license, and appellant answered immediately that he had no license. After completing a computer check, McNeal determined that appellant had been declared a habitual violator. Only then did McNeal place appellant under arrest.

On October 25, 1994, appellant was indicted as a habitual violator. Appellant filed a motion in limine, which was heard on February 14, 1995; the motion sought to suppress evidence of no license and to

quash the arrest. The trial court denied the motion. Since the evidence on the motion was the prosecution's entire case, the trial court sentenced appellant upon denial of the motion. Notice of appeal was filed February 15, 1995.

Appellant's sole enumeration of error is that the trial court erred in denying the motion in limine. The grounds for the motion in limine were two: first, the officer made an invalid, initial stop; second, the officer failed to advise the appellant of his right to remain silent prior to asking him for his driver's license.

The officer had, prior to his stop of the appellant, a specific and articulable suspicion that appellant was either a habitual violator driving without a valid driver's license or was driving without a license in his immediate possession. The concerned citizen furnished timely, accurate, and detailed information, not only as to appellant's identity and physical description, but also as to the tag and vehicle description, appellant's present location and expected immediate future conduct. The concerned citizen gained this information from personal knowledge of appellant's known habits and accustomed conduct. All of this information was verified immediately by the officer just prior to his stopping appellant. Although the officer did not know the concerned citizen or how reliable the information was, all the specific facts were as the officer had been told, so that there was a reasonable indicia of reliability for the facts and a reasonable basis upon which to believe that appellant did not possess a driver's license. Such reasonable belief formed the basis for a reasonable, articulable suspicion to stop appellant within the constitutional parameters of *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968). The officer had, prior to the stop, "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" to justify a brief investigative stop of the vehicle. Id.; see also *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979); *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975).

This Court, in *Easterlin v. State*, 216 Ga. App. 112, 113-114 (452 SE2d 801) (1995), a case almost on all fours with the case sub judice, distinguished the facts of the case from the facts in *Vansant v. State*, 264 Ga. 319 (443 SE2d 474) (1994). The facts and circumstances in this case are even stronger than those in *Easterlin v. State*, supra, because not only was the officer told directly in great detail as to the identity of the appellant and description of the make, model, year, tag, and location of the car, but the officer was told where the car would go in the immediate future, as well as the specific criminal offense being committed. The officer, prior to the stop, was able to verify such specific facts as to reliability; the identity of the tipster was revealed to the officer but not recorded; this was a concerned citi-

zen, not someone who was part of the criminal milieu.

"Although a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect, reliability may be established if the details are corroborated by the observations of the police." (Citations omitted.) *Stanley v. State,* 213 Ga. App. 95, 96 (443 SE2d 633) (1994).

"[T]he tip here was not an anonymous one, it was provided by a paid confidential informant and then transmitted through the channels of police communication. Thus, the tip had more indicia of reliability than an anonymous tip. [Cit.] The tip made a prediction about future behavior and gave specifics regarding the men's activity. See generally *Alabama v. White,* 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990)." *Beck v. State,* 216 Ga. App. 532, 535 (455 SE2d 110) (1995).

In the case sub judice, the information was provided by a concerned citizen who provided her identity and talked openly and with great specificity about appellant. "A concerned citizen has always been given a preferred status regarding the testing of the credibility of his reported information. *Cichetti v. State,* 181 Ga. App. 272, 273 (1) (351 SE2d 707) [(1986)]." *Hestley v. State,* 216 Ga. App. 573, 574 (1) (455 SE2d 333) (1995); see also *Whitten v. State,* 174 Ga. App. 867, 868 (331 SE2d 912) (1985); *Thomas v. State,* 173 Ga. App. 481 (2) (326 SE2d 840) (1985); *Johnson v. State,* 164 Ga. App. 501 (2) (297 SE2d 38) (1982).

The Supreme Court in its holding in *Vansant v. State,* supra at 320, held, "[t]he U. S. Supreme Court recognized the difficulty in defining 'the elusive concept of what cause is sufficient to authorize police to stop a person,' and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States v. Cortez,* 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). 'This demand for specificity in the information upon which police action is predicated is the central teaching of (the Supreme Court's) Fourth Amendment jurisprudence.' *Terry v. Ohio,* supra at 21, n. 18." In the case sub judice, the police action in stopping appellant had the requisite specificity in the information upon which the stop was predicated so that the constitutional safeguards have been satisfied.

The trial court did not err in denying the motion in limine based upon the alleged invalid, initial stop.

The second basis for the appellant's motion in limine was that the appellant was not given warnings pursuant to *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), after he was

stopped and prior to any questions being asked of him. The officer, after stopping appellant, said good morning and asked to see appellant's driver's license. The officer had only a reasonable, articulable suspicion that appellant had no license and lacked probable cause to arrest, until after he had conducted the investigation; the officer had no intent to arrest appellant at the time of the stop. The stop was to conduct a traffic investigation only. The appellant's reply that he had no driver's license furnished the probable cause for the arrest for, at least, driving without a license in possession. It was only then that the officer ran appellant's name on the computer and learned that appellant had been declared a habitual offender. The question regarding the driver's license came within seconds after the stop, so that no reasonable person could believe that they were under arrest and that they were not free to leave after the officer had been afforded a reasonable time to finish conducting a traffic investigation. A reasonable person does not mean a person with a guilty conscience who knows as soon as they see the blue light that they will be arrested for matters known to them, but are not as yet known to the police. *Carroll v. State*, 203 Ga. App. 22, 23 (416 SE2d 354) (1992).

In *Hughes v. State*, 259 Ga. 227, 228 (378 SE2d 853) (1989), the Supreme Court articulated the test for determining if a traffic stop constituted custodial arrest and not a mere *Terry* stop, requiring *Miranda* warnings to be given prior to any questioning. The court held: "[t]he test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary." Under the facts of that case, the driver was told that he was not free to leave and was detained until other officers arrived and conducted an investigation, which was more than just a temporary investigative detention.

The Supreme Court, in *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986), held that "[w]hen a violator is placed in custody or under arrest at a traffic stop the protection of *Miranda* arises; however, roadside questioning at a routine stop does not constitute a custodial situation. *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984)." See also *Steward v. State*, 182 Ga. App. 659, 660 (356 SE2d 890) (1987); *Tibbs v. State*, 207 Ga. App. 273 (427 SE2d 603) (1993).

"As a general rule, '(o)ne who is the subject of a general on-the-scene investigation is not in custody. *Shy v. State*, 234 Ga. 816, 820 (218 SE2d 599) (1975).' *Glass v. State*, 166 Ga. App. 225, 226 (303 SE2d 764) (1983)." *Mason v. State*, 177 Ga. App. 184, 185 (338 SE2d 706) (1985). "Police officers at the scene of a traffic stop may conduct a general on-the-scene investigation, which may even require that persons be temporarily detained, without such being classified as custodial interrogation." *Metheny v. State*, 197 Ga. App. 882, 884 (400

SE2d 25) (1990).

In *State v. Pastorini*, 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996), this Court explained custody for purposes of *Miranda*, "[t]he Supreme Court also held that the safeguards prescribed by *Miranda* become applicable only after a detainee's 'freedom of action is curtailed to a "degree associated with formal arrest." (Cit.)' Id. at 440. The rationale behind the holding is that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights. . . . The fact that an officer retains a detainee's license for a short period during the course of an investigation does not necessarily mean that the detainee is in custody, even if at that point, by leaving, the detainee could be arrested for violating State law. See [*Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990)], where we found a driver who could not show proof of insurance during a routine traffic stop, and thus could have been arrested if he attempted to leave, was not 'in custody' until after he had been given field sobriety tests and formally arrested."

"In determining whether a suspect was in custody for *Miranda* purposes, 'a court must examine all of the circumstances surrounding the interrogation[,] but "the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Cits.)' *Stansbury v. California*, 511 U. S. __ (II) (114 SC 1526, 128 LE2d 293) (1994). The 'ultimate inquiry' is a mixed question of law and fact. . . . *Thompson v. Keohane*, 516 U. S. __ (II) (B) (116 SC 457, 133 LE2d 383) (1995), recently reaffirmed that in making this determination, the court must first ascertain the circumstances surrounding the interrogation. This is a purely factual determination and receives deferential review on appeal. Second, given those circumstances, the court then must determine if a reasonable person would have believed he or she was not at liberty to terminate the interrogation and leave. . . . A reasonable person test, rather than the four-factor test applied in earlier decisions, applies to determine whether an individual not formally arrested is nevertheless in custody for *Miranda* purposes. . . . A 'reasonable person' has been defined as 'one "neither guilty of criminal conduct and thus apprehensive, nor insensitive to the seriousness of the circumstances." ' [Cit.]" *State v. Wintker*, 223 Ga. App. 65, 66-67 (476 SE2d 835) (1996).

There was no custodial detention or arrest upon stopping that a reasonable person would believe had occurred in the few seconds required for the officer to ask for appellant's license. Thus, the trial court did not err in denying the motion in limine based on the

officer's failure to give appellant *Miranda* warnings during that time interval.

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED OCTOBER 21, 1996 —
RECONSIDERATION DENIED OCTOBER 29, 1996 — 

*Michael E. Garner*, for appellant.

*J. Gray Conger, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney*, for appellee.