A98A1087. JOHNSON v. THE STATE.
(506 SE2d 234)

ANDREWS, Chief Judge.

Christopher Alan Johnson appeals from the denial of his motion for new trial after being convicted of theft by taking (motor vehicle). He contends the court erred in admitting his statement that he had just stolen the vehicle and that evidence of his character was improperly admitted.

1. Viewed with all inferences in favor of the jury's verdict, the evidence was that Dr. Hester had left his red soft top Jeep CJ5 at Kennesaw Auto for service. When Hough, the owner of Kennesaw Auto, left those premises Saturday, September 14, 1996, around 2:00 p.m., the Jeep was sitting on his lot and he had the key to it in his pocket. He had planned to test drive it but did not due to bad weather.

Kennesaw Officer Tolbert was patrolling in her marked patrol car at approximately 5:50 a.m. September 15 when she saw a red Jeep soft top rapidly exit the parking lot of Kennesaw Auto without stopping or slowing before entering the roadway. The Jeep was accelerating rapidly and fishtailing as it headed northbound on Main Street. Officer Tolbert called for backup and began following the Jeep because of prior incidents of people breaking into cars at Kennesaw Auto and stealing radios.

The Jeep began signaling a right turn onto Knightsbridge Road about a half-mile from the auto center, and Officer Tolbert activated her blue lights. The Jeep immediately veered back onto Main Street and accelerated, causing the driver to have trouble controlling it. Officer Tolbert activated her siren and pursued the jeep another .7 mile until the Jeep struck the right curb, blowing both passenger side tires, crossed into the southbound lane, went into the ditch and flipped several times. The Jeep came to rest on its wheels facing southbound and was still slowing as Johnson was ejected from the driver's side door, landing face down on the pavement. The second occupant, Harmon, was thrown out of the passenger's side door, suffering a broken leg and arm. Johnson's injuries appeared more serious, including internal injuries resulting in bleeding from his nose and ears. Officer Tolbert opined that these injuries were caused by Johnson's colliding with the steering wheel in the accident.

Johnson did not move after being ejected, while Harmon stood

and made a motion that indicated to the officer that he was going to do something. Officer Tolbert handcuffed Harmon for a moment, believing he was preparing to flee, but when he complained of pain in his arm and she realized he was not going to flee, she released him. She testified that she cuffed him "for my safety. I had no idea what his intentions were. He was not under arrest; however, I was conducting an investigation."

As she was handcuffing Harmon, Officer Riley arrived. Johnson apparently recognized him, asking "Riley, is that you?" Officer Riley recognized Johnson, and Johnson asked him for help. Officer Riley advised that the ambulance was on the way and asked Johnson why he had run. Johnson answered that they had just stolen the Jeep. Asked who was driving, Johnson said he was. Medical personnel arrived, and both Johnson and Harmon were taken to the hospital where they were later charged.

The evidence was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Johnson's first enumeration is that the trial court erred in denying his motion to suppress[1] evidence of his statements to Officer Riley, arguing that *Miranda* warnings were required.

"In *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), the United States Supreme Court held that a person taken into official police custody or otherwise deprived by police of their freedom of action in any significant way must be advised of their constitutional rights. In its decision, however, the Supreme Court failed to set forth what was meant by 'in custody.' But, it later addressed this issue in *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984).

"In that case, the Supreme Court formulated an objective test to determine whether a detainee is 'in custody.' That test is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. Id. at 442. The Supreme Court also held that the safeguards prescribed by *Miranda* become applicable only after a detainee's 'freedom of action is curtailed to a "degree associated with formal arrest." (Cit.)' Id. at 440. The rationale behind the holding is that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights." *State v. Pastorini*, 222 Ga. App. 316, 317 (1) (474 SE2d

---

[1] Since the motion sought to prevent Officer Riley's testimony regarding Johnson's statement, the motion was properly one in limine. *McClain v. State*, 226 Ga. App. 714, 715 (1) (487 SE2d 471) (1997).

122) (1996). See also *Hardin v. State*, 269 Ga. 1, 3 (2) (a) (494 SE2d 647) (1998).

The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous. *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1998).

Here, Johnson, who had known Officer Riley for two years, testified that he got hit in the head, had substantial chest injuries, and had no recollection of the events after the wreck or the next four weeks. Johnson was on the ground bleeding and not moving when he asked Officer Riley for help. It was obvious to the officers that he was seriously injured, and medical assistance had already been summoned when Officer Riley asked him why he had run. After Officer Riley told Johnson the EMTs were on the way, one of the officers asked who was driving and Johnson responded he was.

Johnson argues that he was not free to leave because he had been pursued by Officer Tolbert with activated lights and siren, he attempted to elude the officer, reaching speeds of 70 mph in a 35-mph zone, and wrecked. Additionally, Harmon had been handcuffed, although only momentarily, and Johnson was physically unable to leave the scene.

There is no question that, under the circumstances, Officer Tolbert had sufficient basis upon which to make a *Terry*[2] stop of the car prior to the wreck to investigate her suspicions regarding Kennesaw Auto. Once the wreck occurred, however, the officers were faced with also investigating the accident,[3] and that is the primary context for our consideration of the *Miranda* custody issue.

In *Morrissette v. State*, 229 Ga. App. 420, 424 (2) (b) (494 SE2d 8) (1997), Morrissette lost control and flipped his vehicle, injuring his passengers. When Officer Nix responded to the accident, Morrissette identified himself as the driver and the officer noticed a strong odor of alcohol. He decided to call an officer more experienced in DUIs and placed Morrissette in the rear of his patrol car for approximately five minutes to await that officer. The door handles had been removed from the rear doors, making them difficult to open from inside.

There, this Court concluded that, even though Morrissette had no apparent way of leaving the scene and had a legal duty to remain at the accident scene, see OCGA § 40-6-270 (a), he had not been arrested for *Miranda* purposes by such initial investigative steps even though momentarily detained in the rear of the police car. See also *Gray v. State*, 222 Ga. App. 626, 632 (4) (476 SE2d 12) (1996);

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).
[3] Although Cobb County officers prepared the official accident report, they were not yet on the scene.

*Dupont v. State*, 204 Ga. App. 262, 263 (2) (418 SE2d 803) (1992); *Daugherty v. State*, 182 Ga. App. 730 (356 SE2d 902) (1987).

Nor does the fact that someone has become the focus of an investigation, even to the point where police have probable cause for an arrest, trigger *Miranda*. *Morrissette*, supra; *McConville v. State*, 228 Ga. App. 463, 465 (1) (491 SE2d 900) (1997); *Dupont*, supra. Therefore, that the officers had probable cause regarding the numerous traffic offenses committed by Johnson did not convert the situation to a custodial one requiring *Miranda* warnings before inquiry was made concerning the accident, including who had been driving the car and why Johnson had fled from the officer.

The "reasonable person" in this situation "does not mean a person with a guilty conscience who knows as soon as they see the blue light that they will be arrested for matters known to them, but [which] are not as yet known to the police. [Cit.]" *Brown v. State*, 223 Ga. App. 364, 367 (477 SE2d 623) (1996).

Although Johnson may have known he was subject to arrest for auto theft, the officers did not when they began their accident investigation. We conclude, as did the trial court, that a reasonable person under these circumstances would not have believed his freedom of action had been more than temporarily curtailed by the accident investigation and, therefore, he was not in custody for *Miranda* purposes.

*State v. Wintker*, 223 Ga. App. 65 (476 SE2d 835) (1996), relied upon by Johnson, is factually distinguishable. There, the driver of the car had already been arrested for speeding, driving with a suspended license, and marijuana possession and placed in the rear of the police car when Wintker, the daughter of the car's owner and a passenger, was placed in the rear with him after refusing consent to a search of the car. The remaining two passengers were allowed to stand outside the car while the officers awaited a drug dog, which alerted on the car, and a suitcase containing drugs was located. It was then that Wintker's statement that the suitcase was hers, made in direct response to an officer's inquiry at this point, occurred, resulting in a finding that she was entitled to *Miranda* warnings.

3. Johnson also complains that his character was improperly placed into evidence by the State when he was asked on cross-examination why he left school.

During direct examination, Johnson testified that he went through the tenth grade, last attending school in 1992. On cross-examination, he was asked why he quit school and replied "[r]un away from home." Then, the following exchange occurred: "Q. I'm sorry. You will have to speak up. A. I ran away from home. Q. How many times? A. Several times. I couldn't tell you exactly how many." At this point, trial counsel stated "[y]our Honor, relevance."

Pretermitting the fact that Johnson arguably opened the door to this area of inquiry and the objection made was untimely, *Kapua v. State*, 228 Ga. App. 193, 196 (2) (491 SE2d 387) (1997), the argument made here was not part of the objection voiced below and will not be considered here for the first time. *Thomas v. State*, 224 Ga. App. 816 (1) (482 SE2d 472) (1997).

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

DECIDED AUGUST 25, 1998.

*David C. Butler*, for appellant.

*Benjamin F. Smith, Jr., District Attorney, Debra H. Bernes, W. Thomas Weathers III, Nancy I. Jordan, Assistant District Attorneys*, for appellee.