A98A2280. SMITH v. THE STATE.
(512 SE2d 19)

JOHNSON, Chief Judge.

After a bench trial, Charles Smith was found guilty of driving under the influence of alcohol to the extent it was less safe for him to drive, driving without a license and driving without proof of insurance. Smith appeals from the DUI and driving without a license convictions.

1. Smith contends the trial court erred in denying his motion to suppress because the arresting officer had no reasonable articulable suspicion justifying the stop of his car. We disagree.

In reviewing a trial court's ruling on a motion to suppress, this Court construes the evidence most favorably to uphold the findings and judgment of the trial court. *Pickens v. State*, 225 Ga. App. 792 (1) (484 SE2d 731) (1997).

The arresting officer testified that she was on patrol on November 15, just before 8:00 p.m., when she first encountered Smith driving on Tara Boulevard in Clayton County. An automobile race had just ended nearby, and traffic was heavy in the area. It was well known to police officers that the racing events were often accompanied by an increase in drunk driving incidents.

The officer observed Smith "weaving erratically back and forth" within his lane. The officer followed Smith for a while and was unable to observe any legitimate reason for the weaving. There were cars in the adjoining lane, and the officer thought that Smith's driving was unsafe. The officer testified that, in her experience, there seemed to be a relationship between weaving and driving while under the influence of alcohol. Thinking that Smith might be under the influence of alcohol, the officer pulled him over. After further investigation, including her observations, Smith's attempt at a field test and license and insurance checks, the officer formally arrested Smith.

"A police officer may legally conduct a brief investigatory stop without a showing of probable cause where the officer observes unusual conduct which, when viewed in the light of [her] experience, causes [her] to conclude that the individual is involved in criminal activity." (Citations and punctuation omitted.) *Atkins v. State*, 209 Ga. App. 70 (432 SE2d 661) (1993).

In *Semich v. State*, 234 Ga. App. 89 (506 SE2d 216) (1998), we examined the issue of whether weaving within a lane, which is not a crime per se, justifies a brief investigatory stop. Id. at 91 (b). We held that the defendant's action of weaving within a lane, combined with his abrupt change in direction of travel and the late hour, gave rise to reasonable suspicion justifying a stop. Id. at 92. Although in *Semich* the officer observed furtive movement, a fact not present in the instant case, the court's reasoning and decision were primarily based upon the sufficiency of weaving within a lane as grounds for a brief stop.

We find the reasoning in *Semich* persuasive. The *Semich* court expressly recognized that the law has become increasingly less tolerant of intoxicated drivers and implicitly disapproved an earlier case intimating that weaving within a lane was insufficient to justify a stop. We agree and hold that under the circumstances presented here, weaving within a lane raised a reasonable suspicion that Smith was intoxicated and should not be driving.

This is not a situation in which an officer was arbitrarily harassing a motorist for no sensible reason; rather the officer stopped someone she reasonably suspected, based on her own observations, posed an immediate and significant danger to the public. See *Atkins*, supra at 71; *State v. Armstrong*, 223 Ga. App. 350, 352-353 (2) (477 SE2d 635) (1996). The trial court did not err in denying Smith's motion to

suppress. See *Allenbrand v. State*, 217 Ga. App. 609, 610 (1) (458 SE2d 382) (1995).

2. Smith claims the trial court erred in denying his motion to suppress evidence obtained at the scene because he was not given his *Miranda* warnings when he was first asked to step out of the car to take field sobriety tests.[1] Smith argues that he was under arrest and the warnings were required because when he asked if he could leave, the officer told him he could not. Given the facts of this case, we disagree.

When a person is placed in custody or under arrest at a traffic stop, the protection of *Miranda* arises; however, roadside questioning at a routine stop does not constitute a custodial arrest. *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986); *Metheny v. State*, 197 Ga. App. 882, 884 (1) (a) (400 SE2d 25) (1990). A detained individual is not under arrest simply because, by leaving, he could be arrested for violating state law. See *State v. Pastorini*, 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996). Nor is he under arrest because an officer has discovered the commission of a traffic offense for which he could be arrested. See *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990). The safeguards prescribed by *Miranda* become applicable only after a detainee's freedom of action is curtailed to a degree associated with formal arrest. *Johnson v. State*, 234 Ga. App. 116, 117 (2) (506 SE2d 234) (1998). A person is in custody if a reasonable person in the detainee's position would have thought the detention would not be temporary. See *Pastorini*, supra. The question of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous. *Johnson*, supra at 118.

The officer observed Smith weaving, stopped him and asked for his license and proof of insurance. The officer detected a strong odor of alcohol and noticed Smith's speech was slurred and his eyes were red. Smith presented an expired insurance card and no driver's license. A computer check revealed that Smith had a California license, but that it expired in 1985. Smith then admitted to the officer that he did not have a valid license and that it was suspended in Oregon.

The officer asked Smith where he had been going. Smith replied that he was on his way home and asked the officer if she would "go ahead and let [Smith] drive on home." The officer replied that she would not. Because she wanted to conduct sobriety tests and to break

---

[1] The trial court granted Smith's motion to suppress breath test results on the ground that, in reading Smith the implied consent warning, the officer read the word "test" instead of "tests." The ruling was not appealed and is not at issue.

up an argument Smith was having with his passenger, the officer asked Smith to step out of the car. Smith got out of the car but had difficulty standing. At some point during the stop, Smith told the officer "he'd only had a couple" of drinks.

The officer asked Smith if he would consent to some field tests, and he agreed. Smith had difficulty following instructions and was unable to stand up to perform the tests. The officer discontinued the tests, placed Smith under arrest for DUI, then read him his *Miranda* rights.

The fact that Smith had become the focus of an investigation, even to the point where the officer had probable cause for an arrest, did not constitute a formal arrest for *Miranda* purposes. See *Johnson*, supra at 119 (2); *Trudewind v. State*, 224 Ga. App. 223, 224 (1) (480 SE2d 211) (1997). Smith was not in custody until after he was given the field sobriety tests and formally arrested. See *Crum*, supra. Although the officer told Smith during the investigation that he was not free to leave, not every detention is an arrest. See *Radowick v. State*, 145 Ga. App. 231, 238 (3) (244 SE2d 346) (1978). We conclude, as did the trial court, that a reasonable person under these circumstances would not have believed his freedom of action had been more than *temporarily* curtailed by the investigation and, therefore, he was not in custody for *Miranda* purposes. See *Johnson*, supra. The trial court's decision is not clearly erroneous. See *State v. Dible*, 232 Ga. App. 73, 74 (502 SE2d 245) (1998). Compare *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998).

We do not agree that *Hughes v. State*, 259 Ga. 227 (378 SE2d 853) (1989), requires a different result. There the Supreme Court upheld the trial court's determination that an arrest occurred when the officer told the detainee he could not leave. In that case, the officer detained the suspect while he waited for assistance from other officers. When the other officers arrived, the detainee was asked to perform field tests. *Hughes* involved more than just a temporary investigative detention. *Brown v. State*, 223 Ga. App. 364, 367 (477 SE2d 623) (1996). Here, the officer was still conducting her investigation at the time she denied Smith's request to leave and asked him to step out of the car.

Moreover, the Supreme Court in *Hughes* affirmed the trial court's determination that the detainee was arrested because there was evidence in the record to support that determination. Likewise, in this case there is evidence in the record to support the trial court's ruling. A trial court's factual determination after a suppression hearing must be accepted by the appellate court where it is not clearly erroneous. See *State v. Louis*, 185 Ga. App. 529 (364 SE2d 896) (1988).

Considering the circumstances surrounding the stop and the def-

erential treatment given the trial court's determination on appeal, we find that the trial court did not err in denying the motion to suppress based on the officer's failure to give Smith *Miranda* warnings prior to conducting the field test. See *Brown*, supra at 368-369.

3. Smith contends the trial court abused its discretion by permitting the state to introduce evidence of two prior DUI convictions entered against him in Oregon. Smith argues that the convictions were inadmissible because: (1) the state did not prove that the Oregon DUI statute was comparable to OCGA § 40-6-391 (see subsection (h) (3)); (2) the prior DUIs improperly injected his character into evidence; (3) the prior DUI convictions did not prove any elements of § 40-6-391; and (4) the prior evidence was so prejudicial it outweighed any probative value.

The state filed a notice of intent to introduce the evidence of similar transactions to show bent of mind and course of conduct. After a hearing and ruling that the evidence was admissible, the officers testified as to the details of the Oregon DUI cases, concluding that their observations of Smith indicated that he was driving under the influence of alcohol to the extent he was a less safe driver.

The decision to admit prior similar transaction evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. See *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998). Although the general character of an accused is inadmissible unless he chooses to put his character in issue, where an accused is on trial for the commission of a crime, proof of a distinct, independent and separate offense is admissible if there is sufficient logical connection between the two from which it can be said the proof of one tends to establish the other. *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991). Prior acts of driving under the influence are relevant to prove bent of mind or course of conduct in a subsequent DUI case. *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992). Evidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so. *McCullough v. State*, 230 Ga. App. 98 (495 SE2d 338) (1998) (physical precedent only); *Fields v. State*, 223 Ga. App. 569, 571 (2) (479 SE2d 393) (1996).

Smith's reliance on OCGA § 40-6-391 (h) (3) as requiring a different result is misplaced. OCGA § 40-6-391 (h) (3) provides that in determining whether an offense is a "prior conviction" under Chapter 6, a conviction in another state is taken into consideration if the law violated substantially conforms to or is parallel with this Code section. The "prior conviction" provision contained in Chapter 6 appears

to relate to issues of punishment and sentencing, not to the admissibility of evidence in the guilt and innocence phase of a trial. This is because the only other references in Chapter 6 to other convictions concern sentencing. See, e.g., OCGA § 40-6-391 (c), (g) (2), (k) (2); *Millwood v. State*, 213 Ga. App. 419 (447 SE2d 343) (1994); *Moore v. State*, 181 Ga. App. 548 (1) (352 SE2d 821) (1987). Admissibility issues are primarily dealt with in Title 24 of the Code. See, e.g., OCGA § 24-2-2 (admissibility of parties' character and conduct in other transactions).

Moreover, a person need not be convicted of an offense for evidence of the prior transaction to be admissible. See *Sisson v. State*, 232 Ga. App. 61, 64-65 (3), n. 1 (499 SE2d 422) (1998). Thus, the state did not have to show that Smith would have been convicted under Georgia law for the similar transaction evidence to be admitted. What was relevant was the fact that Smith previously got behind the wheel and drove while under the influence of alcohol when it was less safe for him to do so. See *McCullough*, supra. That he did so in Oregon rather than in Georgia is of little importance. Balancing the probative value of the evidence of the other DUIs against their potentially prejudicial impact, an abuse of discretion is not shown. *Nelson v. State*, 224 Ga. App. 623, 624 (2) (481 SE2d 605) (1997).

4. Smith claims the trial court abused its discretion by ordering him to pay travel expenses the state incurred in calling the Oregon police officers as witnesses. We disagree.

OCGA § 17-11-1 provides that the costs of prosecuting a case may be charged against a convicted defendant, and that judgment may be entered against him for "all costs accruing in the committing and trial courts and by any officer pending the prosecution." Those costs include the costs of witnesses for the state. See OCGA § 17-11-2. OCGA § 24-10-27 provides that witnesses residing outside the county are entitled to be paid for expenses incurred in traveling from and returning to their homes by the nearest practical route.

Smith complains that the costs did not accrue in the trial court or by any officer involved in the prosecution of the instant case. He points out that the two Oregon police officers whose travel costs he was ordered to pay testified not about the offenses charged here, but about prior transactions. Smith cites and we have uncovered no authority prohibiting the assessment of such costs simply because the witnesses testified as to similar transactions rather than the charged offenses. We find no error in that regard.

Smith also complains that the payment of hotel and airline ticket costs for the witnesses was not authorized by any statute. We hold, however, that those expenses come within the meaning of "all costs accruing in the . . . trial courts." OCGA § 17-11-1. There was no error.

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED FEBRUARY 3, 1999 —
RECONSIDERATION DENIED FEBRUARY 19, 1999 —

*Monte K. Davis*, for appellant.
*Keith C. Martin, Solicitor, Kimberly A. Gross, Assistant Solicitor*, for appellee.