## A99A1456. THREATT v. THE STATE.
### (524 SE2d 276)

ANDREWS, Presiding Judge.

Theodore Threatt appeals from the judgment of conviction entered on jury verdicts finding him guilty of driving a vehicle while he was under the influence of alcohol (DUI) to the extent that he was a less safe driver and improper lane change.

Threatt claims that his Fourth Amendment right to be secure from unreasonable searches and seizures was violated when a police officer entered his home without a warrant and without his consent to question him about a report received from a concerned citizen that he had been seen by the citizen just minutes before erratically weaving his car across lanes of traffic. Because the officer did not have both probable cause to arrest and exigent circumstances when he entered Threatt's home, the entry violated the Fourth Amendment, and the trial court erred by admitting evidence obtained inside the home during the questioning. Since we cannot find beyond a reasonable doubt that the evidence admitted in violation of the Fourth Amendment did not contribute to the jury's guilty verdict on the DUI charge, Threatt is entitled to reversal of the conviction and a new trial on this charge. There was no error in the trial court's refusal to suppress additional evidence lawfully obtained by the officers outside of Threatt's home, which evidence was sufficient to support the guilty verdicts.

Threatt also claims that his Fifth Amendment right not to incriminate himself was violated when the officer obtained incriminating evidence by questioning him while he was in custody without advising him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). As to this claim, we find that Threatt was not in custody at the time he was questioned; therefore, *Miranda* did not apply and there was no violation of the Fifth Amendment.

We agree with Threatt's contention that the trial court's instructions to the jury on improper lane change were inconsistent and so confusing that it was likely the jury was unable to render an intelligent verdict based on the charge alleged in the accusation. Therefore, Threatt is also entitled to reversal of the conviction and a new trial

on this charge.

Threatt's additional claims challenging the sufficiency of the evidence and other jury instructions are without merit.

The facts are as follows: Eldonnette Colleado testified that she was driving home with her daughter when she saw a man, later identified as Threatt, driving in an erratic manner. After Threatt almost ran her off the road and she saw him swerving from lane to lane, Colleado called the police from her car on a cellular phone and reported the erratic driving. While staying on the phone with the police and seeing Threatt continue to swerve across lanes of traffic, Colleado followed Threatt to his home, where Threatt parked his car and went inside. Colleado reported her location to the police, stopped a short distance from Threatt's home, and waited for the police. A police officer met Colleado at that location in a few minutes. According to Colleado, the officer arrived about 20 minutes after she began following the car.

The police officer testified that, before he arrived, he had been informed by police radio that Colleado was following a car being driven in an erratic manner, and that he had been en route in an attempt to intercept the car. Before he was able to do so, however, the officer received word that Colleado had followed the car to where it was parked at an apartment complex. The officer said that about ten minutes passed from the time he received the report that Colleado was following the car to the time he arrived to where Colleado was waiting near the parked car. When the officer arrived, Colleado told him that the car had almost hit her on two occasions and that she had seen the car running other cars off the road and erratically weaving from lane to lane. She told the officer that she followed the car to the apartment complex and watched the driver, whom she and her daughter described to the officer, park the car and enter one of the apartments. From his police car, the officer checked the license tag on the parked car and found that it was registered to Threatt. The officer also felt the hood of the car and determined that it was still hot from being recently driven.

Based on this information, the police officer, along with another officer who arrived at about the same time, knocked on the door of the apartment no more than 15 minutes after receiving the radio report that Colleado was following the car. When a woman answered the door, one of the officers saw a man inside the apartment who matched the description given to him by Colleado and her daughter. Without a warrant and without obtaining consent to enter, the officer stepped a short distance — about two feet — inside the apartment. The officer testified that he did so for the purpose of investigating his suspicion that the man had been driving under the influence of alcohol. The officer also stated that, because evidence of alcohol in a sus-

pect's blood diminishes with the passage of time, he entered the apartment to investigate his suspicion and to prevent destruction of evidence.

The officer identified himself to the man, asked whether he was Theodore Threatt, and told him that he was there to investigate a report that he had just been seen driving his car in an erratic manner. The man confirmed that he was Threatt. At that point, the officer testified he was close enough to Threatt to smell the odor of alcohol about Threatt's person. While still standing inside the apartment, the officer then asked Threatt if the car parked outside was his, if he had been driving it, and whether he had been drinking any alcoholic beverages. During the questioning, the other officer remained just outside the door to the apartment. Threatt admitted that the car was his and that he had been recently driving it. According to one officer, Threatt first responded that he had not been drinking, then said that he started drinking after he drove the car home. The other officer testified that Threatt said he had not had anything to drink since he drove the car home. At no time before or during the questioning did the officers ask Threatt to step outside his apartment. There was no evidence that Threatt refused to cooperate with the investigation or that he attempted to use his home as a sanctuary to evade or delay the investigation.

After Threatt was questioned inside his apartment, the officers asked Threatt to step outside his apartment so that Colleado and her daughter could see him. Threatt complied, and Colleado's daughter identified him as the man driving the car she and her mother had been following. Outside the apartment, the officers further observed that Threatt's eyes were glassy and red and that he had a strong odor of alcohol about his person. After Threatt failed or refused to complete field sobriety tests, the officers arrested Threatt, charged him with DUI, and read him his implied consent rights. Threatt later refused to take the state-administered breath test to determine his blood alcohol content. Both officers testified that, in their opinions, Threatt was under the influence of alcohol at the time of his arrest, and in that condition he was a less safe driver. As similar transaction evidence, the State also introduced evidence of Threatt's previous DUI charge.

Threatt and his wife testified that he had driven his car home about an hour before the officers came to their apartment. Threatt said that he had no alcoholic beverages before he drove home, but that after he arrived home he drank several vodka and grapefruit juice drinks during the hour which passed before the officers arrived. Threatt denied telling the officers that he had not consumed any alcoholic beverages after arriving home.

1. On these facts, Threatt moved to suppress all evidence gath-

ered during the investigation and subsequent arrest on the basis that the officer's entry into his home to question him without a warrant or consent to enter was an unreasonable search or seizure in violation of the Fourth Amendment.

With the information possessed by the two officers, they were entitled to knock on the outer door of the apartment without violating the Fourth Amendment. *Pickens v. State*, 225 Ga. App. 792, 793 (484 SE2d 731) (1997); *Gilreath v. State*, 247 Ga. 814, 819 (279 SE2d 650) (1981). When Threatt's wife opened the door, one of the officers could see a man inside the apartment who matched the description of the man given to him by Colleado and her daughter. At that point, the officers had information from Colleado, a known concerned citizen, and from their own investigation corroborating elements of Colleado's report, that the man had committed the offense of reckless driving. We need not decide whether this information was sufficient under the circumstances to provide the officers with probable cause to arrest for reckless driving, or whether it was a basis for only a brief investigatory detention pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). Given the reported erratic driving, the circumstances were also sufficient to give the officers a reasonable articulable suspicion for a brief *Terry* investigation into whether the man was under the influence of alcohol or some other drug while he was driving.

The issue is whether under these circumstances the officer's nonconsensual, warrantless entry into Threatt's apartment violated the Fourth Amendment.

> It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest.

(Citation and punctuation omitted.) *Welsh v. Wisconsin*, 466 U. S. 740, 748 (104 SC 2091, 80 LE2d 732) (1984). In giving effect to these Fourth Amendment protections, the U. S. Supreme Court has held that to justify a nonconsensual, warrantless intrusion into a person's home, there must exist probable cause for the arrest or search inside the home and a showing of exigent circumstances. Id. at 749; *Payton v. New York*, 445 U. S. 573, 583-590 (100 SC 1371, 63 LE2d 639) (1980); *Steagald v. United States*, 451 U. S. 204, 211 (101 SC 1642, 68 LE2d 38) (1981); *Carranza v. State*, 266 Ga. 263, 264-266 (467 SE2d 315) (1996); *Griffith v. State*, 172 Ga. App. 255, 256-257 (322 SE2d

921) (1984) (physical precedent). Furthermore, the underlying offense supporting the intrusion must be of sufficient gravity to justify the exception to the warrant requirement. *Welsh,* 466 U. S. at 750-753. For example, when an arrest in a home is at issue, even if exigent circumstances are present, warrantless, nonconsensual entry is unreasonable where the suspected activity is a minor, noncriminal traffic offense. Id.

Applying these holdings, we conclude that, upon a showing of probable cause to arrest for the offenses of DUI (OCGA § 40-6-391) or reckless driving (OCGA § 40-6-390), either of these offenses is a sufficiently serious criminal activity to justify an officer's warrantless, nonconsensual entry into a suspect's home to arrest the suspect — if exigent circumstances exist to justify the entry. Since the officer had no probable cause to arrest Threatt for DUI before entry was made into his home, the suspicion that Threatt drove his car under the influence of alcohol provided no basis for the officer's entry into Threatt's home to investigate that suspicion without a warrant or consent.[1] Even if there was probable cause to arrest Threatt for reckless driving before the officer entered Threatt's apartment, we find that exigent circumstances did not exist justifying a nonconsensual, warrantless entry to arrest for this offense. The reckless operation of the car and the consequent threat to public safety had ended. With two officers present, one could have gone to obtain an arrest warrant, while the other stayed to ensure that Threatt did not leave. As to the reckless driving, there was no fear of destruction of evidence if the arrest was delayed in order to obtain a warrant. Moreover, there was no evidence that Threatt attempted to evade or delay any investigation or arrest by refusing to come out of his apartment or by refusing entry to the officers. Yet the officers did not ask Threatt to come out of his apartment until after an officer had entered the residence and questioned him, nor did the officers seek permission to enter. Under these circumstances, the State failed to carry its burden to show the existence of exigent circumstances justifying the nonconsensual, warrantless entry. *Hamrick v. State,* 198 Ga. App. 124, 126 (401 SE2d 25) (1990); *Clare v. State,* 135 Ga. App. 281, 284-285 (217 SE2d 638) (1975).

It follows that the questioning of Threatt inside his apartment violated his Fourth Amendment right to be secure in his home from unreasonable searches or seizures. The trial court should have

---

[1] We note that, when an officer has probable cause to arrest for the offense of DUI, the need to prevent destruction of evidence (which may occur by the dissipation of alcohol from a DUI suspect's blood while a warrant is obtained) may constitute an exigent circumstance which could justify a nonconsensual, warrantless entry into the suspect's home to arrest the suspect. See *State v. Tosar,* 180 Ga. App. 885, 888 (350 SE2d 811) (1986).

granted Threatt's motion to suppress to the extent it sought to exclude all evidence obtained during the questioning inside the apartment.

We find no error, however, in the trial court's refusal to exclude other evidence obtained outside the apartment after Threatt complied with the officer's request to step outside. Outside the apartment, the officers observed clear signs that Threatt was under the influence of alcohol, and he was positively identified as the driver of the car seen just a few minutes earlier by Colleado and her daughter erratically weaving from lane to lane. The officers attempted to administer field sobriety tests to Threatt, but he failed or refused to complete them. At that point, Threatt was arrested and charged with DUI.

The Fourth Amendment protections accorded to Threatt inside his home were not designed to protect against evidence lawfully obtained outside the home which gave the police probable cause to arrest at that point. *Carranza*, 266 Ga. at 268. We conclude this evidence was from an independent and lawful source and therefore was not subject to suppression as the indirect fruits of the unlawful questioning inside the apartment. Id.; *Dorsey v. State*, 212 Ga. App. 479, 481 (441 SE2d 891) (1994); compare *Griffith*, 172 Ga. App. at 255-258 (subsequent evidence was the fruit of an illegal arrest inside the home); *Clare*, 135 Ga. App. at 285-286.

Nevertheless, because evidence obtained inside the apartment was erroneously admitted in violation of the Fourth Amendment, we must determine if the error was harmless. Error of constitutional dimension is harmless only if it can be determined beyond a reasonable doubt that it did not contribute to the jury's guilty verdict. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). Part of the erroneously admitted evidence was the officer's testimony that Threatt stated he had not consumed any alcoholic beverages since he arrived at his apartment after driving the car. This evidence directly contradicted Threatt's defense at trial that he drank no alcohol before he drove the car, but that he consumed several alcoholic drinks at his apartment just before the officers arrived. Under these circumstances, we cannot say beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the jury's guilty verdict on the charge of DUI. As to the charge of improper lane change, given the eyewitness testimony supporting this charge, we find beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the jury's guilty verdict.

Accordingly, Threatt's conviction for DUI must be reversed, and Threatt is entitled to a new trial on this charge.

2. Threatt claims he was in custody when he was questioned by the officer inside his apartment and that statements he made during

this questioning without being given warnings pursuant to *Miranda v. Arizona*, 384 U. S. 436, violated his Fifth Amendment right not to incriminate himself. He contends the trial court erred by denying his motion in limine to exclude those statements.

*Miranda* warnings must be given before questioning a suspect who is in custody. Under *Miranda*, a suspect is considered to be in custody when a reasonable person in the suspect's position would conclude that his freedom of action has been restrained to the degree associated with a formal arrest. *Miranda*, 384 U. S. at 444; *Stansbury v. California*, 511 U. S. 318, 321 (114 SC 1526, 128 LE2d 293) (1994); *Smith v. State*, 236 Ga. App. 548, 550 (512 SE2d 19) (1999). Although the police officer briefly questioned Threatt from a position a couple of feet inside his apartment, we find nothing in this encounter which would have caused a reasonable person to believe that his freedom of action had been more than temporarily restrained by the questioning. Id. at 551. No arrest was made inside the apartment. After the brief questioning, the officer requested that Threatt step outside the apartment, and Threatt complied. Only after Threatt was identified by Colleado's daughter outside the apartment as the driver of the car, and Threatt failed or refused to complete field sobriety tests administered by the officers, was he formally arrested and charged with DUI. Under these circumstances, we find no clear error in the trial court's denial of the motion in limine on the basis that the questioning inside the apartment was noncustodial and no *Miranda* warnings were required.[2]

3. There is no merit to Threatt's contention that the properly admitted evidence was insufficient to support the guilty verdicts.

There was sufficient evidence to support the guilty verdict on the charge that Threatt drove his car while under the influence of alcohol to the extent that he was a less safe driver. The State presented testimony from Colleado and her daughter that Threatt was recklessly swerving his car from lane to lane and running other cars off the road. Further testimony was presented from Colleado and two police officers that, less than fifteen minutes after Threatt arrived in his car at his apartment, the officers observed signs outside the apartment that Threatt was under the influence of alcohol to the extent that, in their opinion, he would have been a less safe driver in that condition. Based on the short period of time between Colleado's observation of Threatt's erratic driving and the police officers' observation of signs that Threatt was intoxicated, a jury could conclude beyond a reasonable doubt that Threatt drove his car while under

---

[2] In light of our ruling in Division 1, supra, we need not address Threatt's contention that statements he made inside the apartment during questioning should have been excluded for additional reasons.

the influence of alcohol to the extent that he was a less safe driver. *Duggan v. State*, 225 Ga. App. 291, 293-294 (483 SE2d 373) (1997). Although Threatt testified that he had been home for about an hour before the officers arrived, and that all the signs of intoxication observed by the officers resulted from alcohol he consumed after he arrived home, whether this was a reasonable explanation was for the jury to decide. *Cantrell v. State*, 230 Ga. App. 693, 695 (498 SE2d 90) (1998). Even if the evidence was circumstantial, it was sufficient to exclude every reasonable hypothesis except that of guilt, and was sufficient to support the conclusion that Threatt was guilty of the charged DUI beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence was also sufficient for the jury to find Threatt guilty beyond a reasonable doubt of improper lane change as charged in the accusation. *Jackson v. Virginia*, 443 U. S. 307.

4. We agree, however, with Threatt's contention that the trial court's instruction to the jury on the charge of improper lane change was inconsistent, was likely to confuse the jury, and that reversal and a new trial are required as to this offense.

The accusation charged Threatt with improper lane change in that he "change[d] lanes without first ascertaining that such movement could be made with due caution and safety of others." The accusation substantially tracked the language of OCGA § 40-6-48 (1) which provides that a vehicle be driven within a single lane "and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The accusation incorrectly cited OCGA § 40-6-123 (b) as the Code section related to the allegations in the accusation. Section 40-6-123 (b) requires that a driver give a signal of intention to change lanes sufficient to alert other drivers approaching from the rear or from the opposite direction.

Threatt does not complain that this constituted a fatal variance in the accusation — a variance between the Code section cited and the allegations in the accusation goes only to the form of the accusation. *Selley v. State*, 237 Ga. App. 47, 50-51 (514 SE2d 706) (1999). Rather, Threatt complains that the trial court first instructed the jury by reading the language of the accusation charging him with an improper lane change in violation of OCGA § 40-6-48 (1), then later read OCGA § 40-6-123 (b) and told the jury that he was charged with improper lane change in violation of that Code section.

Because these instructions were inconsistent and likely confused the jurors to the extent that they could not render an intelligent verdict on the charge alleged in the accusation, reversal and a new trial are required on the charge of improper lane change. *Reece v. State*, 210 Ga. 578, 579 (82 SE2d 10) (1954).

5. Contrary to Threatt's contentions, the trial court did not introduce new evidence into the case, confuse the jury, or commit reversible error by instructing the jury on the law related to noncustodial investigatory detention and *Miranda* warnings.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 1, 1999.

*Melvin E. Cooper*, for appellant.

*Roxann G. Daniel, Solicitor, David B. Ranieri, Russell B. Poole, Assistant Solicitors*, for appellee.