A98A0119. TUTTLE v. THE STATE.
(502 SE2d 355)

JOHNSON, Judge.

After a jury trial, Charles Tuttle was found guilty of driving under the influence of alcohol to the extent that it was less safe to drive and driving the wrong way on a one-way street. See OCGA §§ 40-6-391 (a) (1); 40-6-47. He appeals from the conviction entered

on the DUI charge.

1. Tuttle challenges the sufficiency of the evidence to support his DUI conviction.

On appeal, we view the evidence in a light most favorable to support the verdict, and an appellant no longer enjoys the presumption of innocence; moreover, this Court determines the sufficiency of and does not weigh the evidence or determine witness credibility. *Tanner v. State*, 225 Ga. App. 702, 703 (484 SE2d 766) (1997). So viewed, the evidence shows a police officer observed Tuttle at 3:40 a.m. traveling in the wrong direction on a one-way street. The officer ordered Tuttle to stop. When the officer approached Tuttle's car, he detected a heavy odor of alcohol. He also noticed that Tuttle's eyes were glassy and glazed over, and his speech was slurred. The officer asked Tuttle if he had been drinking, to which Tuttle replied that he had one beer several hours earlier. At the officer's request, Tuttle stepped out of the car. According to the officer, Tuttle appeared to have difficulty walking. He walked with an uneven gait and "stumbled over his own feet."

Tuttle was given several field sobriety tests. He failed all six parts of the horizontal gaze nystagmus ("HGN") test. When asked to perform the walk and turn test, Tuttle stepped off the line twice and did not turn properly. While performing the one-leg stand test, Tuttle raised his arms for balance, contrary to the officer's instructions. The officer, who was a four-year veteran of the police department's special DUI task force and had made approximately 700 DUI arrests in his career, concluded from his observations and Tuttle's performance on the field tests that Tuttle was too impaired to drive. The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Tuttle was guilty of being a less safe driver due to the influence of alcohol. See *Kovacs v. State*, 227 Ga. App. 870, 872 (1) (490 SE2d 539) (1997).

2. Tuttle contends the trial court erred in quashing his subpoena for production of documents served upon the arresting officer. Before trial, Tuttle requested the officer to produce: (a) any and all videotapes made of Tuttle before, during, and after his arrest, and any and all documents the officer produced as a result of the stop and arrest; (b) any and all training materials the officer used while receiving training in DUI detection and testing; (c) any and all books he read relating to DUI detection and testing; and (d) copies of the reports of the five incidents written up immediately before and the five incidents immediately after Tuttle's arrest. The state moved to quash the subpoena claiming it sought irrelevant information and was overly broad, unreasonable and oppressive. Tuttle responded that the information sought was relevant to his defense. The trial court granted the state's motion.

"The defense must make a prima facie showing that the

requested materials are relevant to his defense and that he has a right to the materials, and the trial court may properly quash an unreasonable and oppressive subpoena." (Citations and punctuation omitted.) *Wingfield v. State*, 229 Ga. App. 75, 83 (5) (493 SE2d 235) (1997); see OCGA § 24-10-22 (b) (1). Furthermore, the defendant must show that there is a reasonable probability that, had the requested materials been provided to him, the outcome of the trial would have been different. Id.

(a) *Videotapes and arrest documents.* As Tuttle concedes on appeal, the question of whether the officer should have been required to produce a videotape of the arrest is moot because no videotape was made. Because Tuttle makes no argument in his appellate brief regarding other documents the officer might have made related to the stop and arrest, any issue related to non-production of those records is deemed abandoned. See generally *Boatright v. State*, 192 Ga. App. 112, 119 (10) (385 SE2d 298) (1989).

(b) *DUI training materials.* Tuttle states that the requested training materials would have allowed him to impeach the officer's credibility and reduce the weight of his testimony regarding the accuracy of the field tests. However, the officer testified that he did not have any DUI field test training materials in his possession. Thus, he had nothing to produce in this regard.

(c) *All books and materials the officer read regarding DUI detection and testing.* Tuttle claims this information was relevant to the officer's credibility and the weight to be given his testimony. We do not agree that materials the officer read on the issue of DUI detection were relevant to Tuttle's guilt or innocence. Even assuming arguendo these materials were relevant, Tuttle presents no grounds for reversal. At trial, Tuttle cross-examined the officer as to the proper procedures for conducting the field tests and whether those procedures were followed. Tuttle has not shown how his not having materials the officer read concerning DUI field testing harmed his defense. See *Frost v. State*, 200 Ga. App. 267, 271 (4) (407 SE2d 765) (1991) (harm as well as error must be shown for reversal based on trial court quashing subpoena). Tuttle has not met his burden of showing there was a reasonable probability that had the materials been produced, the outcome of the trial would have been different. See *Wingfield*, supra.

(d) *Copies of officer's reports of incidents before and after Tuttle's arrest.* Tuttle maintains these reports are relevant to the officer's credibility. An officer's reports of other arrests have no relevance to the guilt or innocence of the defendant, and the trial court is absolutely correct to deny the defendant access to them. *Taylor v. State*, 172 Ga. App. 827 (1) (324 SE2d 788) (1984) (defendant not entitled to production of arresting officer's reports of other DUI suspects for

credibility purposes). The trial court did not abuse its discretion in quashing the subpoena. See *Wingfield*, supra; see generally *Plante v. State*, 203 Ga. App. 33, 34 (1) (416 SE2d 316) (1992).

3. Tuttle argues the trial court erred in denying his motion to exclude the HGN test results because the officer who administered the test: had no formal training in administering field sobriety tests; administered the HGN test while Tuttle was sitting instead of standing, in contravention of law enforcement guidelines; could only *estimate* the angle of onset of nystagmus; and admitted that the test was only 77 percent accurate.

Contrary to Tuttle's contention, the record shows that the officer, who had been a police officer for seven years and a member of the department's DUI task force for four years, received sufficient training in administering field sobriety tests. He attended an eight-hour course on sobriety testing and received personal training and updates from a senior DUI officer who was a certified drug recognition instructor. The arresting officer had administered the battery of field tests used in this case to approximately 400 people. The officer also received training in the administration of the HGN test from three other officers. The officer testified in great detail how each test was administered, what clues he looked for, and how Tuttle responded. Formal education is not required even for a witness to qualify as an expert in DUI detection. See *Livingston v. State*, 221 Ga. App. 630, 631 (1) (472 SE2d 163) (1996). A combination of experience and study may suffice. Id. The officer's training in this case was sufficient. See generally *Hawkins v. State*, 223 Ga. App. 34, 39 (1) (476 SE2d 803) (1996).

The fact that the officer could only estimate the angle of onset and admitted the test was not 100 percent accurate does not make the test result inadmissible. No scientific procedure is infallible, and a trial court is not required to exclude scientific evidence simply because there is a possibility of error. See *Caldwell v. State*, 260 Ga. 278, 287 (1) (c) (393 SE2d 436) (1990). " 'An accused may always introduce evidence of the possibility of error. . . . Such evidence would relate to the weight rather than the admissibility [of the evidence].' " *Hawkins*, supra at 38 (1).

As the party raising the objection, Tuttle had the burden of showing error in the administration of the HGN test. See *Hawkins*, supra at 38 (1). Although Tuttle argues that the officer violated law enforcement guidelines by permitting Tuttle to remain seated during the HGN test, he has not indicated where in the record we can find such guidelines. Moreover, even though the officer administered one HGN test while Tuttle sat in the car, he also performed a second test while Tuttle was standing. Thus, Tuttle has not shown error in the manner in which the test was administered.

Even assuming the HGN test was not administered properly, reversal would not be required. The HGN test results simply showed *a* symptom of impairment. The state did not rely solely on the HGN test results, but also upon Tuttle's performance on other field sobriety tests and his appearance, odor and behavior at the time of the stop. Considering the other evidence of Tuttle's impairment, admission of the HGN test results was harmless. See *Manley v. State*, 206 Ga. App. 281, 282 (424 SE2d 818) (1992); *Foster v. State*, 204 Ga. App. 632 (420 SE2d 78) (1992).

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 12, 1998.

*Hamil, Dickinson & Dubuc, Brian M. Dubuc*, for appellant.

*June D. Green, Solicitor, Wanda L. Dallas, Assistant Solicitor*, for appellee.