A98A2110, A98A2111. GUILD v. THE STATE (two cases).

(508 SE2d 231)

ELDRIDGE, Judge.

This is an appeal from two separate criminal convictions arising from the following set of interconnected facts.

On December 8, 1995, at approximately 11:30 p.m., Robert Dunagan was driving his white Porsche 924S in the far right lane of Broad Street in Augusta, Richmond County, Georgia. At the intersection of Broad Street and Crawford Avenue, he stopped for a red light. A car pulled up beside him in the left lane and then pulled forward in front of Dunagan's Porsche, effectively blocking it.

Appellant Robert Russell Guild jumped out of the back door on the passenger side of the car and pointed a pistol at Dunagan through the Porsche's partially opened window. He demanded money and "was very nervous and yelling[.]" As the victim was fumbling for his wallet, Guild opened the unlocked driver's side door of the Porsche, put the gun to the victim's head, and ordered the victim to "slide over." The victim "said, no, no, take my money, take my money, and he [Guild] said, no, slide over. He had the gun pressed to the side of my head[.]"

As the victim slid over, Guild reached his gun hand down toward the gear shift of the Porsche. The victim used that opportunity to open the passenger side of the car and roll out. The victim "ran down the middle of the road, down the center line, thinking it was over at that point, knowing that he had my car, but I got out of it. . . . As I looked back over my shoulder I was surprised to see him getting out of the — out of my car."

Guild chased the victim down Broad Street, screaming "you're not getting away from me; I'm going to get you; I'm going to get you, motherfucker[.]" The victim "was running and he [Guild] was running after me with the gun, screaming, yelling, I'm going to get you. I had a bad feeling that he was going to get me."

Guild gained rapidly on the victim. The victim "knew he [Guild] was going to catch me so I turned around and I stopped, put up my

hands, and said, don't do it — don't — I'll give you my wallet; I'll give you my wallet. He came up to me, was yelling at me, had the gun to my forehead, just cursing at me. I pulled out my wallet. I told him, I'll give you my wallet."

Guild took the victim's wallet and some money from the victim's pocket. Then Guild replaced the gun against the victim's forehead. The victim "was pleading with him, don't do it, please don't do it, don't shoot me, don't shoot me." In response, Guild "took a step or two back, straightened his arm, took aim . . . and that's when the headlights could be seen coming up over the canal. He [Guild] stopped; he didn't pull the trigger; he ran off into the canal field."

As a result of intensive police investigation, on December 15, 1995, at 11:15 p.m., a car matching the description of the one involved in the car jacking was stopped by law enforcement. Guild was in the back seat. Immediately to Guild's right was a plastic bag containing 1.4 grams of crack cocaine. Robert Dunagan positively identified Guild as the person who perpetrated the crimes against him.

On May 28, 1996, a Richmond County jury found Guild guilty of possession of cocaine with intent to distribute. On June 11, 1996, a second Richmond County jury found Guild guilty of armed robbery, aggravated assault, car jacking, and possession of a firearm during the commission of a crime. *Held*:

*Case No. A98A2110 — Armed robbery; aggravated assault; car jacking; possession of a firearm during the commission of a crime*

1. Guild contends that, even absent a request, the trial court's failure to also give a limiting instruction *contemporaneously* with the introduction of similar transaction evidence is reversible error pursuant to our decisions in *Hinson v. State*, 229 Ga. App. 840, 842 (3) (494 SE2d 693) (1997) and *Belt v. State*, 227 Ga. App. 425 (1) (489 SE2d 157) (1997).

This issue recently has been decided adversely to Guild. See *State v. Belt*, 269 Ga. 763 (___ SE2d ___) (1998) (reversing the Court of Appeals' decisions in *Hinson v. State* and *Belt v. State* and holding that absent a request, it is not reversible error to fail to give a similar transaction limiting instruction). "In passing, we note that, although a trial judge is not required in the absence of a request to give a limiting instruction when similar transaction evidence is admitted, it would be better for the trial judge to do so." Id. at 765. Accordingly, there was no error in this case.

2. In the court below, Guild raised an objection pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Here, he challenges the trial court's step-three *Batson* determination overruling his objection. Guild argues that the State's explanations for

the exercise of its peremptory strikes were not race-neutral.[1] We do not agree.

In the *trial* court, a *Batson* analysis consists of a now familiar — although much debated — three part progression: (a) the opponent of the strikes makes a prima facie showing of discrimination; (b) the proponent offers race-neutral explanations for the use of the strikes; and (c) the trial court determines whether the otherwise race-neutral explanations are to be believed. Here, this progression went as follows:

(a) The trial court required the State to articulate its reasons for the peremptory strikes, rendering the preliminary showing of prima facie discrimination moot. *Barnes v. State*, 269 Ga. 345 (496 SE2d 674) (1998).

(b) The prosecutor offered explanations for the strikes. With regard to the first strike about which Guild complains, against juror Levonia Higgs, the prosecutor explained that he struck Ms. Higgs because she had served as a juror in a theft case with similar facts and had voted to acquit the defendant. With regard to the second strike about which Guild complains, against juror Gennie Harris, the prosecutor explained that he struck Ms. Harris for the same reason that he struck jurors William Moon (a white male) and Angela Overstreet, i.e., because of their exposure to psychological training. The prosecutor explained "we're not sure if psychology will be used as a defense on either a misidentification theory or that this defendant was acting under psychological coercion."

(c) The trial court accepted each of these otherwise race-neutral reasons and overruled the *Batson* challenge.

Here, the prosecutor's step-two explanations are race-neutral on their face. In step three, the trial court accepted the explanations, thereby determining that the otherwise race-neutral explanations were not pretext, which determination is the trial court's role, not ours. *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995); *Hernandez v. New York*, 500 U. S. 352, 359 (111 SC 1859, 114 LE2d 395) (1991). On appellate review of the trial court's step-three determination (as opposed to the prosecutor's step-two explanations), Guild has given us no reason to find as clearly erroneous the trial court's decision to accept the otherwise race-neutral reasons. There is no error.

3. We find that the evidence in this case was quite sufficient for a rational trier of fact to have found Guild guilty beyond a reasonable doubt of armed robbery, aggravated assault, hijack of a motor

---

[1] In his brief before this Court, Guild complains about the exercise of four allegedly race-based strikes; however, he provides argument and citation of authority for only two of them.

vehicle, and possession of a firearm during the commission of a crime. *Barnes v. State*, supra at 347.

Wholly without merit is Guild's contention that the aggravated assault charge should have merged into the armed robbery charge "because the only time such assault occurred was when the robbery took place." The indictment alleged that Guild committed aggravated assault upon the victim "by pointing a handgun at him." The evidence showed that *after* Guild took the victim's wallet and money, he stepped back and aimed the gun at the pleading victim. Apparently, the accomplishment of Guild's purpose was frustrated only by the fear of being caught in suddenly approaching headlights. There was no merger of offenses here.

*Case No. A98A2111 — possession of cocaine with intent to distribute*

4. In his first enumeration of error with regard to the above-numbered case, Guild challenges the introduction of similar transaction evidence. He contends that there were no significant similarities between the independent crime and the one for which he was tried and thus, there was nothing about the independent crime that "proved" the instant case. We disagree.

Although Guild failed to make a transcript of the similar transaction hearing a part of the record in this case, we may garner from the trial transcript that the similar transaction evidence was based upon the following set of facts:

The Gateway Motel in Augusta was known as an area with frequent illegal drug activity. On November 9, 1995, police officers placed the motel under surveillance and observed suspected drug transactions. Pursuant to their investigation, a foot chase ensued during which the officers chased a suspected drug dealer into a Gateway Motel room. In the motel room, in plain view on a dressing table, was a plastic bag containing 17 rocks of crack cocaine. Guild was lying nearby in a bed in the motel room; another man was lying in a second bed in the room; a bag of marijuana was found under Guild's bed; $250 was recovered from Guild's person.

Approximately one month later, apparently while out on bond on the Gateway Motel charge, Guild was arrested for the instant case wherein the car in which Guild was riding was stopped. On the rear passenger seat, in plain view, was a plastic bag containing 1.4 grams of crack cocaine. Guild was sitting on the right rear passenger seat immediately beside the cocaine; another man was sitting on the left rear passenger seat.

Two weeks before the trial of the instant case, a jury found Guild guilty of possession of cocaine with intent to distribute and misdemeanor possession of marijuana based upon the Gateway Motel inci-

dent.[2] The indictment and verdict were introduced in this case, as well as substantive testimony thereon.

"The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character." (Citation and punctuation omitted.) *Maggard v. State*, 259 Ga. 291, 293 (380 SE2d 259) (1989). "Similarity is an important factor in determining the admissibility of the extrinsic crime; however, it is not the only factor, nor is it necessarily the controlling factor. The ultimate issue for admissibility is whether the evidence of other crimes has relevance to the issues in the trial of the case at bar. Depending on the purpose for which the extrinsic evidence is offered, the State may be required to prove a high degree of similarity between the relevant characteristics of the extrinsic crime and the crime charged, or it may have only the burden of showing a logical connection between the crimes which are essentially dissimilar. *Ward v. State*, 262 Ga. 293, 295 (2) (417 SE2d 130) [(1992)]." *Harris v. State*, 222 Ga. App. 52, 54 (473 SE2d 232) (1996).

Here, the trial court instructed the jury that the Gateway Motel incident could be considered for the purpose of showing identity and "the knowledge or intent of the Defendant in the crime charged in the case now on trial." We find sufficient logical connection between (a) Guild's possession in Augusta on November 6, 1995, of a plastic bag containing seventeen rocks of crack cocaine with the intent to distribute such, and (b) his possession in Augusta one month later of a plastic bag containing eight rocks of crack cocaine, which testimony showed was a distribution amount, so that the former helped to prove the latter offense in the manner specified by the trial court. *Barker v. State*, 226 Ga. App. 747, 748-749 (3) (487 SE2d 494) (1997). If the defense chooses to characterize both incidents as merely being present in the proximity of the crack cocaine, i.e., coincidence, then such is an argument for the jury. "Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar *or connected* to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." (Emphasis supplied.) *State v. Johnson*, 246 Ga. 654, 655 (1) (272 SE2d 321) (1980); *Smith v. State*, 203 Ga.

---

[2] Apparently, the similar transaction hearings on both the instant case and the Gateway Motel incident were held simultaneously prior to the trial on the Gateway Motel case. We will presume the correctness of such proceedings and resultant findings in the absence of a transcript. *Gilbert v. State*, 222 Ga. App. 787, 788 (4) (476 SE2d 39) (1996).

App. 3 (416 SE2d 129) (1992); *Collins v. State*, 205 Ga. App. 341 (2) (422 SE2d 56) (1992).

Contrary to Guild's assertions, our decision in *King v. State*, 230 Ga. App. 301 (496 SE2d 312) (1998), is not applicable. There, we found that nothing about a 1984 conviction for *sale* of methamphetamine helped to prove that the defendant was *using* the drug 13 years later. *King v. State*, supra at 303 (defendant charged with possession of drugs in his blood stream). Here, Guild's two-week-old conviction for possession of cocaine with intent to distribute based on an incident almost contemporaneous with the one which comprised the case-in-chief clearly helped to prove the later possession of cocaine with intent to distribute in the manner charged by the trial court. There was no error.

5. In his second enumeration of error, Guild contends that the trial court erred "in admitting into evidence two crime lab reports." In support thereof, Guild alleges that (a) "there was no compliance with the discovery statute. Section 17-16-4 (a) (4), *O.C.G.A.*," and (b) "there is no way to determine which of the reports, if either of them, concerns the alleged illegal substance seized in the case on trial." We find these contentions to be without merit.

(a) Before this Court, Guild contends that the State violated discovery because defense counsel was not given "an opportunity to inspect and copy" the crime lab reports, as required by OCGA § 17-16-4 (a) (4).

However, a review of the record shows that defense counsel's objection at trial was not regarding an "opportunity to inspect and copy" the reports. In fact, the record shows that the instant drug offense was introduced as a similar transaction during the trial two weeks earlier on the Gateway Motel incident; by the conclusion of that trial, the crime lab reports on both incidents were present in the State's file, and the file was made available to defense counsel to inspect and copy the contents thereof.

Instead, at trial, defense counsel repeatedly objected because the State failed to *serve* defense counsel with a copy. "Well I think that the bottom line is that I object to not being furnished with a copy of any of the lab reports that were involved in either the Gateway Motel case or the vehicle stop."

"Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court. The rule is that the scope of review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed through a process of switching, shifting." (Citations and punctuation omitted.) *Robin-*

*son v. State*, 208 Ga. App. 528, 530-531 (430 SE2d 830) (1993).[3]

(b) Appellant did not register an objection that "there is no way to determine which of the reports concerns the alleged illegal substance seized in the case on trial." In fact, the record shows that defense counsel had no difficulty in recognizing the crime lab report on the instant case as State's Exhibit 8, Crime Lab Report No. A95523, and did not object to the expert testimony offered thereon except on the basis that the State "should have provided me with the crime lab report prior to their doing so." Failure to object waives any error. *Banks v. State*, 230 Ga. App. 881 (497 SE2d 821) (1998).

6. Guild's enumerations of error numbers 3 and 4 regarding alleged violations of the discovery statute are controlled by Division 5 (a), supra, and thus are meritless.

7. Guild next contends that the trial court erred in admitting the bag of marijuana seized during the similar transaction incident. The record shows that Guild objected to such evidence because: (a) such was similar transaction evidence and thus irrelevant; (b) counsel's "uncertainty" over the chain of custody; and (c) the State's failure to serve counsel with a copy of the crime lab report. These contentions are without merit.

(a) Evidence regarding the marijuana was part of the res gestae of the similar transaction offense and thus was not "irrelevant."

(b) The chain of custody regarding the marijuana was established as part of the earlier Gateway Motel trial. In the instant trial, defense counsel failed to provide a basis for his "uncertainty" regarding the chain of custody. Nor did he voir dire on that subject or object that the chain of custody on such similar transaction evidence must be proved in the trial of the instant case.

(c) The State was not required to serve defense counsel with a copy of the crime lab report. See footnote 3, supra.

Further, while Guild contends that the introduction of the marijuana "resulted in prejudice," he fails to state how such result obtains. It is fundamental that harm as well as error must be shown for reversal. *McIntyre v. State*, 266 Ga. 7 (9) (463 SE2d 476) (1995). In light of the fact that Guild was charged with possession of cocaine with intent to distribute and that the substance of the similar transaction evidence was that Guild possessed cocaine with the intent to distribute, it is highly unlikely that proof Guild also possessed a misdemeanor amount of marijuana contributed to the jury's verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

---

[3] In passing, we note that OCGA § 17-16-4 (a) (1) "requires only that the State make a defendant's statements available for inspection, copying, or photographing, not that such statements be served upon the defendant." *Lawson v. State*, 224 Ga. App. 645, 647 (481 SE2d 856) (1997).

8. In his sixth enumeration of error, Guild contends that the trial court erred by denying his motion for mistrial based upon alleged improper argument by the prosecutor. We disagree.

Closing arguments were not taken down, but defense counsel objected on the record as follows: "Judge I object to this form of argument. He's suggesting even though we all agree that we had no burden of proof that I should have brought in evidence and I should have produced evidence. I think it's a burden shifting argument and I object to it and move for a mistrial." The trial court admonished the prosecutor, but denied the motion for mistrial.

"[T]he trial judge in passing upon a motion for mistrial on account of alleged improper argument is vested with a broad and sound discretion, and his ruling will not be controlled by this court unless manifestly abused." (Citations and punctuation omitted.) *Martin v. State*, 193 Ga. App. 581, 587 (388 SE2d 420) (1989).

Here, while defense counsel summarized what he thought was *suggested* by the prosecutor's argument, the prosecutor's actual argument is not before this Court in order to determine whether such suggestion is valid. Nor was a proffer made as to the substance of the allegedly improper argument. Thus, on the record before this Court, we cannot say that the trial court's discretion was "manifestly abused" in denying Guild's motion for mistrial based upon alleged improper argument. *Martin v. State*, supra at 587.

9. In his enumeration of error number 7, Guild contends that the trial court erred by charging the jury that they could consider the similar transaction evidence for the purpose of showing "identity," as well as "intent." Guild argues that the similar transaction evidence was not sufficiently distinctive to establish "identity."

Identity is a proper purpose for the introduction of similar transaction evidence. *Williams v. State*, 261 Ga. 640, 642, n. 2 (409 SE2d 649) (1991). Thus, the trial court did not err in charging the jury regarding such proper purpose.

Guild's claim of error really goes to a contention that the similar transaction evidence was improperly *admitted* for the purpose of showing "identity."[4] However, an objection regarding the purpose for the admission of such evidence should have been made at the time admissibility was being determined, i.e., at the similar transaction hearing. *Fairbanks v. State*, 225 Ga. App. 666 (1) (484 SE2d 693) (1997). No such objection is before this Court. Guild's apparent failure to object to the trial court's determination that identity was a proper purpose for the admission of the similar transaction evidence

---

[4] See *Cole v. State*, 216 Ga. App. 68, 69 (453 SE2d 495) (1994), which is the case cited by Guild in support of his contention.

cannot be bootstrapped into meritorious claim by re-tooling it as an alleged charging error. There was no error in the charge.

10. In enumerations of error numbers 8, 9, and 10, Guild challenges the sufficiency of the evidence, contending (a) there was no evidence by which a jury could determine that Guild possessed the drugs found in the vehicle; and (b) there was no evidence by which a jury could determine that Guild possessed the drugs with the intent to distribute. We disagree with both contentions.

"[W]here drugs are found in the immediate presence of the defendant, the jury is authorized to find they are in the constructive possession of the accused. . . . All of the competent evidence adduced at trial, which was admissible against appellant, may be considered to show his constructive or joint possession." (Citations and punctuation omitted.) *Barnett v. State*, 204 Ga. App. 491, 495 (420 SE2d 43) (1992). Further, "[o]n appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence[.]" *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

(a) With regard to the element of possession, we find that evidence that a plastic bag containing 1.4 grams of cocaine was lying in plain view *immediately beside* Guild, coupled with evidence that he was found in possession of 17 rocks of cocaine only a month prior to the instant case, is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Guild "was knowingly in either joint or constructive possession of the cocaine. [Cit.]" *Barnett v. State*, supra at 495.

(b) With regard to the element of intent to distribute, the evidence showed that no device for use of the cocaine, i.e., a crack pipe or other device, was recovered pursuant to the stop of the vehicle. Also, a seventeen-year veteran of the narcotics squad testified that the quantity of cocaine usually recovered from users of the drug is a "dub," i.e., a $20 rock; however, the plastic bag recovered in this case contained eight rocks of crack cocaine worth $160. In addition, evidence of a prior conviction for possession of cocaine with intent to distribute was introduced as a similar transaction.

The above evidence is sufficient to demonstrate beyond a reasonable doubt the intent to distribute. *James v. State*, 214 Ga. App. 763, 764 (449 SE2d 126) (1994); *Davis v. State*, 200 Ga. App. 44, 45 (2) (406 SE2d 555) (1991); compare *Bethea v. State*, 220 Ga. App. 800, 801 (1) (470 SE2d 328) (1996).

Accordingly, when viewed in a light most favorable to the jury's verdict, the evidence is sufficient for a rational trier of fact to have found Guild guilty beyond a reasonable doubt of possession of cocaine with the intent to distribute. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

11. Guild's final enumeration of error is controlled adversely to him as per Division 1, supra.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 26, 1998.

*Stanley C. House*, for appellant.

Russell R. Guild, *pro se.*

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.