## A99A0830. LANCASTER v. THE STATE.
(522 SE2d 30)

BARNES, Judge.

Philip Lancaster appeals from the following misdemeanor convictions: (1) driving under the influence while it was less safe for him to do so; (2) failure to maintain a lane; and (3) possession of an open container of an alcoholic beverage while operating a vehicle. Lancaster contends his convictions should be reversed because (1) he was entitled to a mistrial when the State elicited testimony regarding his exercise of his right to remain silent, (2) the trial court erred when it allowed the State to introduce his admission that he consumed eight or ten beers, (3) the trial court should not have allowed the police officer to testify about his performance on a horizontal gaze nystagmus ("HGN") test because it was not properly administered, and (4) insufficient evidence supports his convictions. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the record shows that on October 1, 1995, at 12:21 a.m., Lancaster was driving on a four-lane divided highway when he swerved from the right lane into the left lane and almost collided with a patrol car driven by Officer Harper. Harper testified that he "had to slam on [his] brakes to keep from hitting him." When Officer Harper saw Lancaster then cross over the outside edge of the right line by approximately two feet, he turned on his blue lights and stopped Lancaster. Lancaster pulled over to the side of the road abruptly, which caused his wheels to slide.

When Officer Harper approached the driver's side of the Ford Explorer driven by Lancaster, he observed a female passenger who appeared to be intoxicated and smelled a strong odor of alcoholic beverages coming from the Explorer. When he spoke with Lancaster, Harper smelled alcohol on Lancaster's breath and noticed that his speech was slurred, his eyes were bloodshot and watery, and his face was red and flushed. Lancaster also ran his words together, "was thick tongued," and "seemed to be confused about his whereabouts." When Lancaster denied he had been drinking, Harper performed an HGN test on Lancaster as "the beginning stage[ ] of [his] field sobriety evaluations."

Officer Harper testified that he was trained and certified to per-

form this test, which involves tracking the movement of a person's eye while it follows an object moved horizontally in front of the person's face. He further testified that a lack of smooth tracking, jerkiness before 45 degrees, and jerkiness at maximum deviation indicate the presence of alcohol in a person's system. When Harper performed this test on Lancaster, he observed a lack of smooth tracking, jerkiness before 45 degrees, and very distinct jerkiness at maximum deviation in both eyes.

Believing that he was probably dealing with a less safe driver, Harper asked Lancaster to step out of the vehicle to perform additional field sobriety evaluations. As Lancaster exited the vehicle, he staggered and grabbed the top of the door, as well as the top of his Explorer for support. Lancaster also staggered when he walked to the back of the Explorer at Harper's request. Before asking Lancaster to perform additional field sobriety tests, Harper asked him if he had any physical impairments that would prevent him from balancing, and Lancaster replied that he did not.

Officer Harper testified that Lancaster was unable to maintain his balance during the one-leg stand after two attempts and two demonstrations by Harper. Lancaster also failed to perform the finger dexterity count satisfactorily after two demonstrations by Harper. Harper then asked Lancaster again whether he had been drinking, and Lancaster denied it. When Harper told Lancaster, "Come on, I can smell it," Lancaster admitted drinking eight or ten beers, and Harper placed him under arrest for driving under the influence. Lancaster refused to consent to a blood or breath test after Harper read him the implied consent warning. Harper testified that, based on his training, experience, as well as his observations of Lancaster's driving, speech, breath odor, and appearance, it was his opinion that Lancaster was impaired by alcohol to the extent that he was a less safe driver.

During an inventory search of the Explorer, Harper saw a clear, plastic cup containing a yellow liquid that, in his opinion, was beer. Harper testified that he was familiar with the appearance and odor of beer and that the yellow liquid in the cup looked and smelled like beer. This cup was located in "the inside console." He also found a still cold, empty beer can under the driver's seat. When Lancaster's counsel cross-examined Harper with his report that stated that a "clear, plastic cup containing one-fourth of a mixed liquor [was] under the driver's seat," Harper admitted that he was mistaken about the cup containing beer and that his report correctly identified the liquid in the cup. He further testified that the cup was located in the console between the two front seats and that he did not know whether the cup was used by Lancaster or his passenger.

Harper also admitted that he was trained to give the HGN test

while the suspect was "standing away from blue lights," and that he gave the test to Lancaster while he was sitting. Additionally, he explained that he decided to arrest Lancaster for driving under the influence after the finger dexterity count and before Lancaster admitted drinking eight or ten beers. Finally, he acknowledged that he did not give Lancaster *Miranda* warnings after the finger dexterity count and that he asked Lancaster again whether he had been drinking to "satisfy" himself and build the case against Lancaster.

1. Lancaster contends the trial court erred by denying his motion for a mistrial based upon an alleged improper comment by the prosecutor on the defendant's right to remain silent. The record shows the trial court held a bench conference after Lancaster's counsel moved for a mistrial, but this conference was not transcribed by the court reporter. Following this bench conference, the trial court gave the jury a curative instruction. Because Lancaster did not renew his motion for a mistrial after this curative instruction, he failed to preserve this alleged error for our review. *Ward v. State*, 234 Ga. App. 610, 611-612 (507 SE2d 506) (1998).

2. Lancaster asserts the trial court erred when it denied his motion to suppress his admission that he had consumed eight or ten beers. Lancaster claims the officer's failure to give him the warnings required by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), rendered it inadmissible.

The trial court denied Lancaster's motion to suppress because it determined the police officer was not required to give Lancaster a *Miranda* warning since Lancaster was not "in custody" at the time the officer asked him about his alcohol consumption. "The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous." *Johnson v. State*, 234 Ga. App. 116, 118 (2) (506 SE2d 234) (1998).

In *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984), the United States Supreme Court formulated an objective test to determine if a person is "in custody."

> That test is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. [Cit.] The Supreme Court also held that the safeguards prescribed by *Miranda* become applicable only after a detainee's "freedom of action is curtailed to a 'degree associated with formal arrest.' (Cit.)" [Cit.] The rationale behind the holding is that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise

of his privilege against self-incrimination so as to require that he be advised of his constitutional rights.

*State v. Pastorini*, 222 Ga. App. 316, 317 (1) (474 SE2d 122) (1996).

In this case, Officer Harper did nothing that "would have reasonably communicated to [Lancaster] that he was in custody." *Metheny v. State*, 197 Ga. App. 882, 884 (1) (a) (400 SE2d 25) (1990). Harper's plan to arrest Lancaster was never communicated to Lancaster and "therefore could have no bearing on [his] perception under the *Berkemer* rule." Id. See also *Johnson*, supra, 234 Ga. App. at 119 (2) (*Miranda* is not triggered by fact that a person has become the focus of an investigation to a point where the police have probable cause to arrest). Likewise, Officer Harper's internal motivations for his questions to Lancaster could not have affected Lancaster's perception. The subjective belief or intent of an officer does not determine whether a person is "in custody." See *State v. Kirbabas*, 232 Ga. App. 474, 476 (502 SE2d 314) (1998).

Because the trial court's determination that Lancaster was not "in custody" is not clearly erroneous, we affirm the denial of Lancaster's motion to suppress.

3. Lancaster contends the trial court erred when it allowed the State to present evidence of his performance on the HGN test because the officer administered it to him while he was sitting, instead of standing. Although the officer admitted he violated law enforcement guidelines when he administered the test to Lancaster while he was sitting, Lancaster submitted no evidence showing how this would affect the validity of the test.

In *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996), we held that the "HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." As a result, evidence of an HGN test should be admitted by the trial court without expert testimony. Id. We also rejected the appellant's claim that an HGN test cannot be admitted "until a foundation is laid regarding the proper administration of the test[ ]." Id. at 35, 38. Instead, we placed the burden on the party objecting to the admissibility of an HGN test to show that it was not properly administered. Id. at 38. Finally, we recognized that "[a] challenge to the method by which an admissible [HGN] test is administered would be the subject of a timely motion or objection at trial and a subsequent analysis thereon by the trial court on a case-by-case basis." Id.

Because the appellant in *Hawkins* did not meet his burden of showing the police officer did not properly administer the test, we did not address whether a party opposing the admission of an HGN test

must also show how an error in its administration may have affected the validity of the test in order to preclude its admission into evidence. In this case, for example, it is difficult to understand, without such testimony, why the results of the HGN test administered to Lancaster could be questionable simply because he was sitting instead of standing.

We need not address this issue here, however, because there was ample evidence, apart from the HGN test, to support Lancaster's conviction for driving under the influence of alcohol. *Tuttle v. State*, 232 Ga. App. 530, 534 (3) (502 SE2d 355) (1998). Harm as well as error must be shown for reversal. *Guild v. State*, 234 Ga. App. 862, 868 (7) (c) (508 SE2d 231) (1998).

4. In his remaining enumeration of error, Lancaster contends there was insufficient evidence to support his driving under the influence and open container convictions. We disagree. The circumstantial evidence, even without the results of the HGN test, amply supports his conviction for driving under the influence, as well as open container conviction. See *Firsanov v. State*, 270 Ga. 873, 874 (1) (513 SE2d 184) (1999); *Wynn v. State*, 236 Ga. App. 98, 100 (2) (511 SE2d 201) (1999).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 17, 1999 —
RECONSIDERATION DENIED OCTOBER 15, 1999 —

*Virgil L. Brown & Associates, Virgil L. Brown, Larkin M. Lee, Eric D. Hearn, Bentley C. Adams III*, for appellant.

*Carmen Smith, Solicitor, Gregory L. Young, Jody L. Peskin, Assistant Solicitors*, for appellee.