### A02A2087. LOPEZ v. THE STATE.
(578 SE2d 304)

ELLINGTON, Judge.

A Cobb County jury found Mike Lopez (a/k/a Cory Thomas) guilty of trafficking in cocaine, OCGA § 16-13-31 (a), possession of marijuana, OCGA § 16-13-30 (a), possession of a firearm during the commission of a crime, OCGA § 16-11-106, and theft by receiving stolen property, OCGA § 16-8-7. Lopez appeals from the order denying his motion for new trial, raising several enumerations of error. For the reasons that follow, we reverse Lopez's conviction for theft by receiving but affirm his remaining convictions.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that during the evening of May 29, 2000, a police officer

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

observed a black Ford Explorer with tinted windows moving erratically through traffic behind him. When the officer moved into the lane in front of the Explorer, the driver slowed down to about 15 to 20 mph to avoid passing the officer. The officer pulled the driver over for an improper lane change. The officer determined Jimmy Lee Pitts was driving; Pitts' passenger identified himself as Mike Lopez. The officer testified that Pitts was extremely nervous and that his hands were shaking. Pitts rolled his window down just halfway when he handed the officer his license. When Pitts took his proof of insurance from the glove box, he turned his back to the officer, completely blocking the officer's view of what he was doing. This behavior prompted the officer to ask Pitts to step out of the car. Pitts complied. During the conversation that followed, Pitts was evasive about where he had been that evening. Lopez, who had no identification, was also evasive when questioned. The officer asked Lopez to step out of the car and patted him down for weapons. During the pat-down, the officer discovered a large roll of cash totaling $1,400 on Lopez's person. Pitts did not have any money. The officer asked Pitts for permission to search the car, and Pitts agreed. Lopez became agitated about what the officer was about to do and would not remain at the back of the car where the officer told him to stay.

When the officer leaned inside the car, he smelled the "pungent" odor of raw marijuana. He opened the glove box and found a loaded .40 caliber Glock pistol. The pistol, stamped "Restricted to Law Enforcement Government Only," was fully loaded with Winchester "black talon" hollow-point bullets, ammunition police officers use. The officer reported the serial number on the weapon to dispatch, who told the officer the pistol had been reported stolen from the Fulton County Police Department. The officer testified that such a weapon was not available for public sale and could only be obtained by theft or on the black market.

The officer also noticed that the passenger seat was reclined. He saw on the floorboard behind the driver's seat "in plain view, like someone had just thrown it there," a ziplock bag. The bag contained marijuana and powder cocaine. The officer then looked inside the center console and found several individually packaged bags of cocaine. A box of sandwich bags was discovered in the pocket behind the driver's seat. The officer recovered 30 grams of cocaine and 108 grams of marijuana. The cocaine was at least 68 percent pure. The contraband was packaged for resale and had a street value in excess of $3,000.

Pitts testified in his defense, stating he had no idea that the marijuana, cocaine, or pistol was in his car. He testified that he had known Lopez for many years as "Cory Thomas" and that he and

Lopez had spent the day together going to strip clubs. Lopez, who represented himself, did not testify at trial.

1. We find the evidence sufficient to authorize the jury's finding that Lopez was in joint constructive possession of the cocaine, marijuana, and pistol found inside Pitts' car. *Johnson v. State*, 248 Ga. App. 454-455 (1) (546 SE2d 562) (2001). The cocaine and marijuana were in plain view inside a car that smelled of raw marijuana. Lopez was nervous about the impending search and gave evasive answers to the officers. He was in possession of an unusually large amount of cash. He was in a position to see the pistol when Pitts took his proof of insurance from the glove box. And given the trafficking amount of cocaine found, the jury was authorized to infer that Pitts and Lopez possessed a loaded handgun to protect their illegal drug trade. This evidence was sufficient to support the jury's finding that Lopez was guilty of trafficking in cocaine, possession of marijuana, and possession of a firearm during the commission of a crime. Id.; *Noble v. State*, 225 Ga. App. 470, 471-472 (484 SE2d 78) (1997).

2. Lopez contends the evidence was insufficient to support his conviction for theft by receiving because the State failed to prove beyond a reasonable doubt that the pistol in his possession was actually stolen. We agree. Under OCGA § 16-8-7, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen." To prove theft by receiving, the State must show that the item received was in fact stolen. "There must be proof of a larcenous taking to authorize a conviction for theft by receiving stolen property. If the goods found in the possession of the defendant are not shown to be that which [have] in fact been stolen, proof of larcenous taking is absent." (Citations and punctuation omitted.) *Johnson v. State*, 236 Ga. App. 356, 358 (2) (511 SE2d 921) (1999). Lopez correctly points out that the officer's testimony that radio dispatch identified the pistol as stolen is nonprobative hearsay. Id. at 357-358 (2). The fact that the weapon was labeled for law enforcement use only and loaded with police-issue ammunition does not exclude the possibility that the weapon may have been given away or sold "on the black market" in violation of the warning. Consequently, the circumstantial evidence of a larcenous taking is insufficient to sustain a conviction for theft by receiving beyond a reasonable doubt. See OCGA § 24-4-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

3. Lopez contends the trial court prevented him from presenting evidence that the $1,400 found in his pocket came from his mother and his girlfriend. The record, however, does not support this conten-

tion. Rather, it reflects the court's understanding that Lopez had no evidence to present. Lopez never told the court, the State, or his standby counsel that he wished to present evidence at trial. We find no error.

4. In his fourth enumeration of error, Lopez contends the trial court improperly determined that he was not indigent and forced him to trial pro se despite his "repeated assertions" that he could not afford to retain a lawyer. The record does not support these claims.

A trial court's determination regarding a defendant's indigent status is not subject to review; however, we may inquire into whether the trial court followed the proper procedure in making that determination. *Hawkins v. State*, 222 Ga. App. 461, 462 (1) (474 SE2d 666) (1996). In this case, the record adequately supports the trial court's reliance on the Circuit Defender's finding that Lopez did not qualify for a court-appointed trial attorney. The record contains a financial statement and booking documents listing Lopez's employers and income. It also contains the Circuit Defender's letter to Lopez explaining that he could reapply for an attorney if he disagreed with the Circuit Defender or he could bring the matter to the court's attention at his next scheduled court date. More importantly, however, the record shows that Lopez actually hired counsel, David Botts, who in fact represented him at his bond hearing immediately after his May 29, 2000 arrest. A year later, at his May 3, 2001 arraignment, Lopez did not contest the Circuit Defender's findings or request appointed counsel. Instead he informed the court he was represented by Brooks Franklin. Given the record evidence of Lopez's nonindigent status coupled with his own assertion that he had retained counsel, we find no fault in the court's alleged failure to revisit the issue and to make a new determination of Lopez's financial status.

Based on the record before us, it appears that Lopez led the court to believe he was represented by counsel for well over a year. Not until the July 12, 2001 calendar call did Lopez express an interest in representing himself. He did not claim indigence at this calendar call or contest the Circuit Defender's findings as to his financial ability. After the court informed Lopez of the seriousness of the charges and warned him against self-representation, Lopez agreed to retain counsel. The court then continued the case for a month so that Lopez could hire a lawyer. The court warned Lopez that if he did not get a lawyer, he would have to represent himself.

At the August 9, 2001 calendar call, Lopez again appeared without counsel but told the court that he had a lawyer and that his lawyer would appear on his behalf for trial the following Monday. However, when his case was called on August 13, 2001, Lopez said he spoke with his lawyer that morning and that his lawyer told him to ask for more time. The court insisted that Lopez call his lawyer and

get him to court, stating that there would be no more continuances. The prosecutor told the court that he spoke with the attorney Lopez named and was told that he did not represent Lopez. The colloquy ended with the court taking Lopez's lawyer's phone number.

A week later, on August 20, 2001, Lopez's case was tried. Before allowing Lopez to proceed pro se, the court questioned him about his education and experience with the criminal justice system and informed him of the nature of the charges and the potential sentences he could receive. Lopez, however, was less than candid in his responses, stating that he had never been to court before even though he had a lengthy record under his alias, Cory Thomas. Further, Lopez insisted that he had never been to "prison," even though he finally admitted he had been to "jail." The court expressed frustration at Lopez's evasive answers, stating "[t]his has been one of my difficulties with you all along, Mr. Lopez, is you're not answering accurately to the court." After determining that the case had been pending for over a year, the court found that Lopez knowingly and voluntarily "put himself in the position of representing himself." The court appointed standby counsel to assist Lopez during the trial.

Based on the record before us, we find that the record reflects that Lopez "was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Citations and punctuation omitted.) *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000). The record shows that Lopez was not indigent. The court gave Lopez several opportunities to retain counsel, impressed upon him the dangers of proceeding pro se, and warned him there would be no further continuances. Yet, Lopez failed to obtain counsel while misleading the court into believing he had counsel. And at the last moment, he requested a continuance. This conduct is both dilatory and deceptive — "the functional equivalent of a knowing and voluntary waiver of appointed counsel." (Citations and punctuation omitted.) *Bryant v. State*, 268 Ga. 616, 617 (2) (491 SE2d 320) (1997) (attempted discharge and appointment of other counsel as a dilatory tactic). Based upon the record before us, we conclude the trial court properly found that Lopez knowingly and intelligently waived his right to counsel after he was made aware of the dangers of self-representation. *Jones v. State*, 272 Ga. at 886; *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998).

5. Lopez contends his co-defendant's attorney made an improper comment on his failure to testify during closing argument. Because Lopez failed to object, this claim of error is not preserved for our review. *Waldrip v. State*, 267 Ga. 739, 751 (20) (482 SE2d 299) (1997). Lopez's pro se status does not relieve him of the obligation to make timely objections and to comply with the procedural and substantive

requirements of the law. *Cammon v. State*, 227 Ga. App. 774, 775 (2) (490 SE2d 529) (1997).

6. Lopez contends he was denied discovery, specifically scientific reports created by the State's expert witnesses. However, Lopez voiced no objection to the State's failure to produce discovery when evidence related to that discovery was adduced against him at trial. Consequently, any error is waived. *Smith v. State*, 250 Ga. App. 465, 467-468 (3) (552 SE2d 468) (2001); *Guild v. State*, 234 Ga. App. 862, 867 (5) (a) (508 SE2d 231) (1998). Further, the record reveals that Lopez was given complete access to the State's file on at least three occasions, and the State's file included copies of the experts' scientific reports. OCGA § 17-16-4 (a) (4) does not require the State to serve a defendant with copies of scientific reports, but only to make such reports available for inspection and copying. *Lawson v. State*, 224 Ga. App. 645, 647 (3) (481 SE2d 856) (1997). We find no error.

7. Lopez contends he received ineffective assistance of counsel at trial. Since he waived his right to counsel and proceeded pro se, Lopez cannot raise an ineffective assistance of counsel claim. *Mullins v. Lavoie*, 249 Ga. 411, 412-413 (290 SE2d 472) (1982).

8. Because we reverse Lopez's conviction for theft by receiving, his remaining enumerations of error are moot.

*Judgment affirmed in part and reversed in part. Smith, C. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 18, 2003 — 

L. David Wolfe, Mark A. Yurachek, for appellant.
Patrick H. Head, District Attorney, C. Lance Cross, Dana J. Norman, Assistant District Attorneys, for appellee.