## S08A0215. WHITE v. THE STATE.
### (662 SE2d 131)

MELTON, Justice.

Following a jury trial, Terrence Raymone White was convicted of felony murder, theft by receiving stolen property, and various other offenses in connection, primarily, with the shooting death of Mark Freeman.[1] White appeals, contending, among other things, that the

---

[17] *Frazier v. State*, 278 Ga. 297, 298 (602 SE2d 588) (2004).

[1] During the July 2005 term of the Superior Court of DeKalb County, White was indicted for malice murder, four counts of felony murder (with aggravated assault, kidnapping, false imprisonment, and possession of a firearm by a convicted felon as each of the four underlying offenses), aggravated assault, kidnapping with bodily injury, false imprisonment, possession of a firearm by a convicted felon, violating the Georgia Controlled Substances Act, violating the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO), and theft by receiving stolen property. Following a September 27-30, 2005 jury trial, White was found guilty on all counts except malice murder, felony murder during a kidnapping, and kidnapping with bodily injury. On October 3, 2005, White was sentenced to life for felony murder (aggravated assault), twenty years to serve for violating RICO (to run consecutive to the felony murder sentence), thirty years to serve for violating the Georgia Controlled Substances Act (to run consecutive to the felony murder and RICO sentences), five years to serve for possession of a firearm by a convicted felon (to run consecutive to the felony murder, RICO, and Georgia Controlled Substances Act sentences), and ten years to serve for false imprisonment and for theft by receiving stolen property (with the sentences to run concurrent with each other and the RICO sentence). The trial court merged the remaining felony murder charges and the aggravated assault charge with the felony murder (aggravated assault) charge for sentencing purposes. White filed a motion for new trial on October 18, 2005, which he amended on July 6, 2007. The trial court denied White's motion for new trial on August 27, 2007. White's timely

evidence was insufficient to sustain his conviction for theft by receiving stolen property, and that his trial counsel was ineffective. For the reasons that follow, we reverse White's conviction for theft by receiving stolen property, but affirm his remaining convictions.

1. Viewed in the light most favorable to the verdict, the record shows that, on September 17, 2004, police responded to a call at the Economy Inn on Moreland Avenue. In room 110, police found Mark Freeman dead from multiple gunshot wounds, with his pants pulled down, and with a partially burnt cigarette in one hand. A confidential informant who lived at the motel informed police that White, a.k.a. "Snake," along with his girlfriend, Sherrie Witten, and Cory Kindell, had left the scene in a blue Ford Crown Victoria.

Testimony at trial revealed that White, a convicted felon who was at the Economy Inn to sell prostitutes and drugs,[2] had previously hidden a gun in the wall of room 110. When White found that the gun was missing from its hiding place on September 17, 2004, he suspected that Freeman, who had purchased cocaine from him earlier in the day, had stolen it from him. White went to retrieve Freeman from an upstairs room, but before doing so told another person in room 110 to make sure that Witten did not leave the room while he went to retrieve Freeman. White dragged Freeman to room 110 and asked him where the gun was. White told Freeman to pull his pants down, and when Freeman refused, another man in the room hit Freeman in the head with a gun. Freeman then began to pull his pants down. White left the room to make a phone call to Kindell, telling him to come and pick him up and to bring a twelve-gauge shotgun so that White could "spray everybody in the room." While White made his phone call, Witten and Freeman were made to stay in the room.

Kindell arrived in White's blue Crown Victoria, and White met him outside and asked for the shotgun. Kindell did not bring any gun, and White returned to the room and continued to question Freeman. When Freeman lit a cigarette, White pulled out a handgun and shot him several times. White emerged from the room and told Kindell that he "did what [he] had to do" and that he had shot "some old cat" who had stolen from him. Kindell drove White from the scene in the blue Crown Victoria. The next day, Kindell and White took the car to a shop where it was painted white.

Kimberly Strickland, a woman who had been at the motel the night of the shooting, helped the police apprehend White by setting up a drug deal. On September 22, 2004, White was arrested in a white

appeal was docketed in this Court on October 11, 2007, and orally argued on January 8, 2008.

[2] White admitted to police that he frequented the Economy Inn to sell prostitutes and drugs. Testimony at trial revealed that White was the pimp for several women at the Economy Inn, and that he was making $500 to $600 a day from the prostitute and drug sales.

Crown Victoria along with Kindell and another male. Police found ten individually wrapped bags of crack cocaine in the car.

The evidence was sufficient to enable a rational trier of fact to find White guilty of felony murder, aggravated assault, false imprisonment, possession of a firearm by a convicted felon, violating the Georgia Controlled Substances Act, and violating RICO beyond a reasonable doubt.[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 16-14-3.

2. The evidence was not sufficient, however, to sustain White's conviction for theft by receiving stolen property. "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen. . . ." OCGA § 16-8-7 (a). In this regard, knowledge that the received goods were stolen "is an essential element of the offense of receiving stolen property." (Citation omitted.) *Abner v. State*, 196 Ga. App. 752, 753 (1) (397 SE2d 36) (1990).

Here, the evidence relating to the theft by receiving charge reveals that, a few months prior to the shooting death of Freeman, White gave the police permission to search his car during a traffic stop. During the search, the police found a handgun underneath the driver's seat with the words "Memphis Police Department" engraved on the handle. White had purchased the gun "off the street," but did not believe that it had been stolen prior to his purchasing it. The evidence presented does not support the inference that the gun was stolen, because

> [t]he fact that the weapon was labeled for law enforcement use . . . does not exclude the possibility that the weapon may have been given away or sold "on the black market." . . . Consequently, the circumstantial evidence of a larcenous taking is insufficient to sustain a conviction for theft by receiving beyond a reasonable doubt.

(Citation omitted.) *Lopez v. State*, 259 Ga. App. 720, 722 (2) (578 SE2d 304) (2003). Accordingly, we reverse White's conviction for theft by receiving stolen property.[4]

---

[3] To the extent that White argues that there was insufficient evidence to prove venue in DeKalb County in connection with his conviction for violating the Georgia Controlled Substances Act, this argument is without merit. The evidence showed that DeKalb County police officers set up the purported drug deal with White and that DeKalb County police officers arrested White at a location in DeKalb County. See *Chapman v. State*, 275 Ga. 314 (4) (565 SE2d 442) (2002).

[4] In light of this disposition, and the fact that White cannot be re-tried on the theft by receiving stolen property charge (*Priest v. State*, 265 Ga. 399 (1) (456 SE2d 503) (1995)), we need not address White's contention that the trial court erred in its jury instruction on theft by receiving stolen property.

3. White contends that the trial court erred in admitting hearsay testimony from Kimberly Strickland, who testified that someone named Jennifer, who did not testify at trial, told her that she had spoken with White immediately after the murder and informed White that she did not think that Freeman had taken his gun. However, even if the trial court erred in admitting this testimony, we find any error to be harmless, because whether or not someone other than White believed that Freeman had taken White's gun was irrelevant to White's own belief that Freeman had taken it. This is especially true when considered in light of Witten's properly admitted testimony that she was in the room where Freeman was shot at the time that White shot him, and at the time that White had accused Freeman of stealing his gun. See *Myers v. State*, 275 Ga. 709, 713 (2) (572 SE2d 606) (2002) ("The erroneous admission of hearsay testimony is harmless . . . where it does not touch on the central issue of the case, or it could not have contributed to the verdict in light of eyewitness testimony regarding the crime") (citation omitted).

4. White argues that his trial counsel was ineffective for failing to (a) object to hearsay testimony from Kimberly Strickland; (b) object to alleged hearsay testimony used to establish venue for the charges relating to violations of the Georgia Controlled Substances Act; (c) object to hearsay testimony that a reliable confidential informant placed White at the scene of the murder; and (d) object on chain of custody grounds to the cocaine found in White's car. In order to succeed on a claim of ineffective assistance, White must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

With respect to the missed objection to Kimberly Strickland's testimony, as we held in Division 3, supra, no harm resulted from the admission of this testimony. Therefore, evidence supports the trial court's conclusion that counsel's failure to object to this testimony did not affect the outcome at trial and did not amount to ineffective assistance. *Culmer v. State*, 282 Ga. 330 (3) (647 SE2d 30) (2007). Similarly, counsel's failure to object to alleged hearsay testimony used to establish venue did not amount to ineffective assistance, because, as shown in Division 1, supra, the admissible evidence

presented at trial was sufficient to establish venue. See *Chapman*, supra, 275 Ga. at 317-318 (4); *Culmer*, supra. Also, the testimony of the confidential informant was cumulative of other, admissible, testimony placing White at the scene of the crime. Accordingly, counsel's failure to object to this evidence also did not amount to ineffective assistance. *Culmer*, supra. Finally, with regard to counsel's failure to make a chain of custody objection, the evidence shows that any such objection would have been fruitless, because the State established that the bags of cocaine that were retrieved from White's car were properly secured, labeled, transported to the crime lab, and tested, thus establishing with reasonable assurance that the cocaine introduced at trial was the same cocaine seized from White's car. *Armstrong v. State*, 274 Ga. 771 (2) (560 SE2d 643) (2002). White's claim of ineffective assistance in this regard is therefore without merit. *Judkins v. State*, 282 Ga. 580 (5) (652 SE2d 537) (2007) (failure to make fruitless objection does not amount to ineffective assistance).

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JUNE 2, 2008.

*Gerard B. Kleinrock*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.

S08A0579. COUSINS et al. v. MACEDONIA BAPTIST
CHURCH OF ATLANTA.
S08A0668. COUSINS v. MACEDONIA BAPTIST CHURCH OF
ATLANTA et al.
S08A0669. LIB PROPERTIES, LTD. v. MACEDONIA BAPTIST
CHURCH OF ATLANTA.
S08A0671, S08X0580, S08X0670. MACEDONIA BAPTIST
CHURCH OF ATLANTA v. COUSINS et al. and LIB
PROPERTIES, LTD. (and two cross-appeals).
(662 SE2d 533)

HUNSTEIN, Presiding Justice.

The instant appeals arise out of a dispute involving the finances of and control over Macedonia Baptist Church of Atlanta, an approximately 200-member church in Southwest Atlanta. Following a hearing held on April 24, 2007, the trial court issued a permanent injunction and other extraordinary relief against Scottie Cousins, Alan Moon, and their corporate co-defendants which, inter alia,